Francis D. VAN DUYSE, Petitioner,

v.

Thomas R. ISRAEL, Respondent.

Civ. A. No. 78-C-740.

United States District Court,
E. D. Wisconsin.

April 15, 1980.

Francis D. Van Duyse, petitioner, pro se.

Bronson C. La Follette, Atty. Gen., and Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Petitioner Francis D. Van Duyse, an inmate at the Wisconsin State Prison at Waupun, has petitioned this court for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Specifically, petitioner challenges his 1974 conviction of ten counts of fraud in the sale of securities in violation of § 551.41(3), Wis.Stats. The following statement of facts is largely taken from petitioner's brief on appeal to the Wisconsin Supreme Court.

Petitioner was the owner and founder of a football newspaper, *Pro Football Exclusive*. In an effort to underwrite the

planned nationwide expansion of this newspaper, petitioner contracted with a number of persons from Waukesha County whereby they would pay him a certain sum of money in return for petitioner's promise to repay the money plus very substantial interest. Petitioner, in fact, repaid very little of the money that was given to him by the persons in Waukesha County. These transactions took place in the spring and summer of 1970.

On August 3, 1972, and January 11, 1973, criminal complaints were filed charging petitioner with sixteen counts of theft by fraud in violation of § 943.20(1)(d), Wis. Stats., and forty-eight counts of violations of the Wisconsin Uniform Securities Law, specifically, twelve violations of § 551.21, Wis.Stats., sale of unregistered securities; twelve violations of § 551.31, transacting business without a license; and twelve violations of §§ 551.41(2) and (3), misrepresentation and fraud in the sale of securities. Several of these charges were ultimately dropped, and petitioner was tried on ten counts of theft by fraud, ten counts of fraud in the sale of securities, and one count of sale of unregistered securities.

Petitioner exercised his right to represent himself although indigent and entitled to have counsel appointed to represent him. At various points in the proceedings, however, the county court appointed "stand by" counsel to provide petitioner with legal advice. Bail was set at $50,000 and subsequently was increased to $51,500. At all times between his arrest and his conviction—from early August 1972 until June 18, 1973—the defendant was incarcerated in the Waukesha County jail, being unable to make bail.

Petitioner filed a number of pretrial motions on his own behalf. Several of these motions were designed to attack the conditions of his confinement at the Waukesha County jail. Petitioner asserted that his mail was being read, that he was being denied access to the telephone and law books, that the authorities were seizing his legal materials, and that he was being denied adequate medical care. Petitioner was granted certain relief as a result of these motions, specifically, an order allowing him to use the telephone and prohibiting the reading of his mail. Petitioner's motions for a change of venue and for dismissal for lack of probable cause were denied.

At trial, petitioner nominally represented himself, although his "stand by" counsel conducted most of the proceedings. The State was represented by an appointed special prosecutor.

The State's evidence consisted primarily of a series of witnesses who testified that they had invested money in petitioner's football newspaper. Each of the witnesses had been contacted by petitioner in Waukesha in the spring and summer of 1970 and asked to enter into a contract with petitioner. The contracts required that persons invest a sum of money which was to be returned over a twenty-four month period, with payments being made every month. The rate of return upon these investments was to be 270 per cent per year. Most of the investors received no return whatsoever, although several received one or two monthly payments.

Petitioner informed the investors that he needed the money to expand the newspaper into other states. Many of the investors were told that the newspaper was making a good profit and that the investment was sound. None of the investors requested to see financial data regarding the newspaper, and the investments were made entirely upon the word of the petitioner. Each witness testified that he or she trusted petitioner and thought nothing improper about the contract and investment until petitioner was unable to make the promised payments.

Also called to testify by the prosecution was the printer who printed *Pro Football Exclusive* in Green Bay. This witness testified that he printed seven monthly editions of the paper from April to October 1969, ranging from 2,300 to 6,700 copies per issue. He further indicated that he printed an issue in July 1970 with a run of 10,000 copies and a special issue for distribution in Minnesota. The printer also testified that in late 1969, petitioner switched printers in order to reduce his costs.

Following the close of the State's case, the charge of violating § 551.21 was dismissed. The defense rested without offering any evidence.

The jury, after having been duly instructed, returned a verdict of not guilty as to each of the ten counts of theft by fraud and guilty as to each of the ten counts of fraud in the sale of securities. Following the denial of motions after the verdict, the Court entered judgment upon the verdict and withheld sentencing. Petitioner was placed on probation for a period of five years on each count, to be served concurrently, and was ordered to make restitution in the amount of $10,050 plus interest from the time of receiving the funds.

Petitioner filed a pro se appeal with the Wisconsin Supreme Court, which appeal was dismissed for failure to properly perfect. Petitioner subsequently moved for post-conviction relief in Waukesha County Court, which motion was denied. Petitioner's probation was revoked in 1978, and he was sentenced to a term of seven years, which sentence is currently being served at Waupun. Additional facts will be referred to below.

■ Petitioner raises a number of issues with respect to his conviction. The greatest reliance, however, is placed on the contention that the State did not produce sufficient evidence to sustain his conviction. Petitioner correctly points out that the recent United States Supreme Court decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires federal courts on habeas review of state convictions to determine whether there was sufficient evidence to justify a rational trier of fact to find guilty beyond a reasonable doubt. This standard is novel with respect to federal review of state court convictions, and the Supreme Court in *Jackson* attempts to provide guidelines as to how this standard is to be applied.

Prior to *Jackson*, federal courts were only required to determine whether there was *any* evidence to support a state court conviction. See *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Sufficiency of the evidence beyond that

minimum was not considered to be a constitutional question but rather a matter of state substantive law to be left to the state appellate courts. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1968), however, established that the due process clause prohibits the criminal conviction of any person except upon proof beyond a reasonable doubt. The Supreme Court in *Jackson* held that *Winship* required more than an inquiry into whether there was any evidence to support a conviction and should be interpreted as requiring an explicit inquiry into the sufficiency of the evidence allegedly supporting a challenged conviction.

■ The Court in *Jackson* emphasized that the newly enunciated standard of review did not require the federal courts to usurp the traditional role of the trier of fact. The test is not whether the reviewing court would have convicted the petitioner on the basis of the evidence presented at trial. Instead, the question is whether, taking all the evidence in the light most favorable to the prosecution, a rational trier of fact could have fairly determined that the accused was guilty beyond a reasonable doubt. The standard, in other words, is similar to that utilized by the federal appeals courts in reviewing convictions obtained in the district courts. See, e. g., *United States v. Tucker*, 552 F.2d 202 (7th Cir. 1977). This requires that there be "substantial" evidence to support a challenged conviction. *Tucker*, supra, at 210–211. It is with these standards in mind that this Court has evaluated the evidence presented in the instant case.

Before it can be determined whether the evidence supports the convictions, however, it must first be determined what elements must be proved in order to convict. Petitioner was convicted of violating § 551.-41(3), Wis.Stats., which provides:

"It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

*   *   *   *   *   *

"(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."

■ It is uncontested that the investment contracts sold by petitioner were securities within the meaning of the statute. The issue on which the parties disagree is whether specific intent must be established in order to obtain a conviction on this charge. Petitioner argues that the State was required to prove that he intended to defraud the persons who invested with him, while the State contends that it was merely required to show that petitioner's conduct was "willful." While it is not altogether clear just where the distinction lies, it appears that petitioner would require that the State prove that he entered into the investment contracts with the purpose or intent of defrauding his investors, while the State would merely require a showing that petitioner knowingly or willfully engaged in conduct which operated as a fraud upon the investors, whether or not petitioner intended that result.

While the Wisconsin courts have not addressed the intent question, the language of the statutory provisions at issue supports the State's interpretation. Section 551.-41(3) speaks of conduct which *operates* or would *operate* as a fraud or deceit upon any person. Section 551.58 imposes criminal liability on any person who "wilfully" violates any provision of the act. Taken together, the plain meaning of the statutory provisions indicates that the State need only prove that the accused wilfully engaged in conduct which operates or would operate as a fraud or deceit upon any person. It is the nature of the act which is dispositive, not the state of mind of the actor. In this sense, the statute imposes a form of strict liability. Once the seller has wilfully engaged in conduct which operates or would operate as a fraud or deceit, he will not be heard to argue that he did not intend the consequences of his acts.

Accordingly, the State was only required to prove that petitioner wilfully engaged in the type of conduct prohibited by the act. Upon a thorough review of the record, I have concluded that this burden was met.

Petitioner's investment contracts carried a completely unrealistic rate of return. Petitioner promised his investors that he would return more than five times their investment within two years. Completely apart from any other representations that may have been made, the mere sale of such contracts in conjunction with the failure to make the required payments could be found by a reasonable trier of fact to be conduct which operated as a fraud upon the investors. When petitioner's many questionable statements concerning the financial prosperity of the newspaper are taken into account, there can be little doubt that the jury's verdict was justified.

■ Petitioner also argues that the trial court erred in its instructions to the jury. Specifically, petitioner objects to the instruction regarding the degree of intent which the jury was required to find in order to convict him of the fraud in the sale of security charges. The challenged instruction is as follows:

"Proof of evil motive or intent to violate the law, or knowledge that the law was being violated is not required."

As discussed above, however, the drafters of the Wisconsin Securities Act chose not to include specific intent as an element of the crime of fraud in the sale of securities. The drafters instead elected to prohibit *wilful* violations of the act, a standard that does not require a showing of evil motive or knowledge that the law is being violated. See, e. g., *United States v. Brown*, 578 F.2d 1280 (9th Cir. 1978).

■ Petitioner faces the same obstacle in his argument that the jury verdicts were inconsistent. Petitioner contends that the jury could not logically have acquitted him of the theft by fraud charges while convicting him of the fraud in the sale of securities charges. While there is some question as to whether the Constitution requires logical consistency · in jury verdict, see *United States v. Lambert*, 463 F.2d 552, 556 (7th Cir. 1972), the question need not be resolved here, because in this case the verdicts were not inconsistent. A verdict is inconsistent when the defendant is charged with two

offenses having identical elements and the jury acquits him of one offense and convicts him of the other. In order to have convicted petitioner of theft by fraud, the jury would have had to find that petitioner obtained property by making false representations "made with intent to defraud." § 943.20(1)(d), Wis.Stats. In order to convict petitioner of fraud in the sale of securities, the jury was only required to find that his conduct was wilful. Thus, the jury could have consistently found that petitioner wilfully acted in a manner that operated as a fraud upon the investors while not specifically intending to defraud them.

■ Petitioner next claims that the trial court dismissed the counts upon which he was ultimately convicted. This contention is based on the following quote from the trial transcript:

"THE COURT: I'm going to dismiss in regard to 551.41 subsection 3 * * *." (Tr. at 1225)

The State contends that the transcript incorrectly reflects the trial court's remark, and that in fact the trial court stated that it would *not* dismiss the fraud in the sale of securities counts. That the State is correct is demonstrated by the fact that immediately following the quoted remark, the Court informed the jury that while the sale of unregistered securities charge had been dropped, the theft by fraud and fraud in the sale of securities counts remained to be decided. (Tr. at 1222) Furthermore, Van Duyse approved the jury instructions relating to the fraud in the sale of securities counts (Tr. at 1235), and made no objection when verdicts relating to these counts were submitted to the jury (Tr. at 1272–1277). Accordingly, this Court is convinced that the charges on which petitioner was convicted were not dismissed and that the transcript does not accurately reflect the holding of the trial court.

■ Petitioner next argues that his right to represent himself was hindered by the fact that he was unable to post bail and was required to prepare his defense from jail where he was denied access to many legal materials. Petitioner was held under bail of $51,500. He had been charged with numerous felonies, however, and at the time of his arrest was on probation from a previous conviction. Under these circumstances, the bail that was set was not excessive, nor was a lower bail required by the fact that petitioner elected to represent himself. While it may well be that petitioner's defense was hampered by his incarceration, he himself chose to refuse the assistance of a court-appointed lawyer. I find no constitutional requirement that a defendant who elects to represent himself must be released without posting bond.

■ I find petitioner's claim that he was denied access to legal materials similarly without merit. It is true that some of petitioner's legal materials were seized by sheriff's deputies during a shakedown of the jail. Petitioner immediately brought a writ of habeas corpus to the trial court which ordered the return of petitioner's materials. In addition, the trial court offered petitioner the use of his own personal law books and stated that petitioner would be allowed photocopies of materials contained in the Waukesha law library. On these facts, it cannot be said that petitioner was denied his constitutional right to prepare for trial.

■ Petitioner next argues that his right to a fair trial was jeopardized when a biased juror was empanelled and by the special prosecutor's "tampering" with key witnesses. Petitioner admits, however, that he failed to object to the selection of the allegedly biased juror and that he failed to utilize one of his peremptory challenges to exclude her. Accordingly, petitioner waived his right to challenge her selection. *Mastrian v. McManus*, 554 F.2d 813 (8th Cir. 1977). Petitioner's claim concerning the conduct of the special prosecutor is wholly factual in nature and has not yet been raised in the state courts. This Court, consequently, may not consider the claim. 28 U.S.C. § 2254(b).

■ Petitioner's final three claims involve the alleged violation of his right to appeal his state court conviction. Under Wisconsin law, a defendant has ninety days from the entry of a judgment of conviction

to file a notice of appeal. § 974.03, Wis. Stats. While petitioner filed a notice of appeal with the trial court within this time limit, he failed to serve notice on the district attorney or the special prosecutor. By failing to serve opposing counsel, petitioner never established personal jurisdiction of the appeal with the Wisconsin Supreme Court. § 274.11, Wis.Stats. On this basis, the Wisconsin court dismissed petitioner's appeal without considering the merits.

Some courts have held that when defense counsel fails to properly perfect an appeal, the defendant has been denied effective assistance of counsel. See, e. g., *Blanchard v. Brewer*, 429 F.2d 89 (8th Cir. 1970). Petitioner, however, acted as his own counsel and has waived the right to raise that claim. *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Nor is this a situation where petitioner's failure to properly perfect is attributable to the State. See *Biggles v. Brewer*, 384 F.Supp. 1 (D.C.Iowa 1974) (State did not appoint appellate counsel until after time for appeal had elapsed). Accordingly, the dismissal of petitioner's appeal cannot be characterized as a denial of due process.

■ Petitioner raises two other issues concerning his appeal which are similarly without merit. Petitioner first claims that he was not informed of his right to appeal by the trial judge. While it is true that petitioner was not informed of his appeal rights at the time of sentencing, he was informed of those rights at the close of the trial. (Tr. at 1230–1231) While a defendant must be informed of his right to appeal, *Macon v. Lash*, 458 F.2d 942 (7th Cir. 1972), there is no reason why the trial court cannot perform this duty at the close of trial rather than at the time of sentencing. That petitioner fully understood that he had a right to appeal is demonstrated by his in-court responses to the trial court's statements concerning his right to appeal (Tr. at 1230–1231), and by the fact that he filed a timely appeal.

■ Finally, petitioner argues that he was denied the right to an effective appeal when his probation officer prohibited him from soliciting money for a "legal defense fund" following his conviction. In light of the fact that petitioner was on probation for the illegal solicitation of funds, it cannot be said that this restriction was unreasonable. Appellate counsel was available to petitioner; unfortunately, he chose to process his own appeal, resulting in its ultimate dismissal. The fault, however, lies not with the State but with petitioner himself.

IT IS THEREFORE ORDERED that the petition of Francis Van Duyse for a writ of habeas corpus is hereby denied.