**UNITED STATES ex rel. Joseph WELLS, Petitioner,**

v.

**Richard De ROBERTIS, Warden, Respondent.**

No. 81 C 4527.

United States District Court, N. D. Illinois, E. D.

April 12, 1982.

Robert M. Hodge, Chicago, Ill., for petitioner.

Melbourne A. Noel, Jr., Rodolfo Garcia, Asst. Attys. Gen., Chicago, Ill., for respondent.

MEMORANDUM OPINION

BUA, District Judge.

Petitioner Joseph Wells was convicted of armed robbery, home invasion, and burglary following a jury trial in the Circuit Court of Illinois. On May 31, 1979 Wells was sentenced for these offenses to two terms of 35 years and one term of 14 years, the sentences to be served concurrently. A notice of appeal was not filed on Wells' behalf within the 30-day statutory period during which an appeal is automatically granted. *See* Ill.Rev.Stat.1979, ch. 110A, par. 606(a). On April 18, 1980 Wells filed a motion for leave to file a late notice of appeal alleging

*inter alia* that his trial counsel, E. Duke McNeil, had failed to file a notice of appeal "despite the fact that he had told Appellant that he would file the Notice." The Illinois Appellate Court denied the motion on the ground that it lacked jurisdiction to grant a late appeal as the motion was filed more than eleven months after judgment was entered. *See* Ill.Rev.Stat.1979, ch. 110A, par. 606(c). The Illinois State Supreme Court subsequently denied petitioner's motion for leave to file a direct appeal.

Wells then filed the instant petition for a writ of habeas corpus in which he raises basically two claims. Wells contends his right of counsel under the sixth amendment, as incorporated in the fourteenth amendment, was violated by trial counsel's failure to file a notice of appeal and the state appellate court's summary denial of his motion for leave to file a late notice of appeal did not comport with constitutional due process standards. The latter claim was abandoned in petitioner's answer, prepared by counsel, to respondent's motion to dismiss. An evidentiary hearing was held on February 18, 1982 to resolve the remaining issue of whether trial counsel agreed to file a notice of appeal on petitioner's behalf.

At the start of the hearing, the court was informed that Joseph Wells' two sisters were unavailable to testify. The parties stipulated, without admitting to the veracity of the testimony, that Lillian Howard and Helen Wells would have testified that E. Duke McNeil stated during a conversation on June 10, 1979 that he had filed a notice of appeal on Wells' behalf. The additional evidence consisted of the testimony of Wells and McNeil and supporting exhibits submitted without objection.

Wells testified that on May 31, 1979 McNeil twice assured him a notice of appeal would be filed on his behalf. According to Wells, McNeil first assured him of this prior to the start of the sentencing hearing and later reiterated this promise in open court during the hearing. Wells also testified

that approximately two weeks after his sentencing hearing, his sisters, Helen Wells and Lillian Howard, informed him that McNeil had stated on June 10, 1979 that he had filed the required notice of appeal.

Wells' testimony on all three points is inconsistent with the documentary evidence and directly contradicted by McNeil's testimony, which this court found completely credible. According to Wells, McNeil reiterated in open court his earlier assurance that he would file the required notice of appeal in response to the sentencing court's question of whether McNeil had prepared an appeal. The certified transcript of petitioner's sentencing hearing fails to reveal any colloquy between McNeil and the sentencing judge regarding Wells' appeal.[1] The only reference to the matter of an appeal in the eleven-page transcript is the sentencing court's admonition of Wells' right to appeal and of the 30-day time limitation to assert that right. Wells' testimony that McNeil promised in open court to file or assist in filing a notice of appeal while displaying to the sentencing judge what Wells took to be a notice of appeal form is simply not credible.

Further, McNeil denied ever assuring Wells he would file a notice of appeal on his behalf. McNeil testified it was not his practice to file notices of appeal as he had filed only five or six in his twelve years as an attorney. Although McNeil had no specific recollection of the conversation which occurred prior to the start of the sentencing hearing, he recalled explaining to Wells on the date of the sentencing hearing the necessary steps to obtain an appeal and instructing him to contact the Public Defender and the State Appellate Defender since Wells was without funds to pay a private attorney. McNeil testified he never indicated to Wells at any time that he would make these contacts for him. In view of Wells' unsubstantiated and connected allegation that McNeil reiterated in open court the promise to file a notice of appeal sup-

1. At the hearing, counsel for petitioner suggested that the court reporter might not have recorded the entire state proceeding. Such spec-

ulation is unwarranted and contrary to the parties' stipulation that the transcript is accurate and complete.

posedly made during the conversation prior to the sentencing hearing and McNeil's unhesitant denial that he ever made such a promise and, finally, Wells' impeached credibility by two prior convictions, Wells' testimony regarding the pre-hearing conversation is not credible.

Wells' version (actually the version told to him by his sisters) of the June 10, 1979 conversation also provides no support for his sixth amendment claim as it is inconsistent with the documentary evidence authored by one of Wells' sisters and directly contradicted by McNeil's testimony. In a letter signed by Helen Wells dated five days prior to the June 10 conversation, she protested McNeil's refusal to assist with Wells' appeal to a Chicago newspaper's reader-service column. Ms. Wells stated, "The family asked the lawyer [E. Duke McNeil] for an appeal, he refused to handle the case any longer, he even stated he don't have a copy of the transcript; saying we must go to the clerk . . . for a copy." Wells admitted that on the date on which he was informed of the June 10 conversation, Ms. Wells also told him she had written a letter to a Chicago newspaper. Wells identified the signature on the June 5, 1979 letter as his sister's. Wells' inability to recall whether or not his sister had informed him of the letter's content does not assist him.

McNeil's testimony regarding the June 10 conversation was to the point and candid. He denied ever assuring Lillian Howard that he had filed the required notice of appeal. "I explained to her that I did not do appeals, that was not my area of expertise, and, as a matter of fact, they had not paid me for the trial of the instant case, or main case, so it was just an impossibility."

McNeil's recollection of that conversation is supported by Ms. Wells' letter. Based on this evidence the June 10 conversation could not have occurred as the stipulated testimony of Wells' sisters indicates.

The great weight of the evidence is contrary to Wells' claim that McNeil promised to file or assist in filing a notice of appeal on his behalf. Ms. Wells' letter establishes that Wells and his family were aware well within the 30-day time limitation to assert Wells' right of direct appeal that McNeil would provide no assistance beyond the sentencing hearing. The evidence tends to show that the failure to perfect a direct appeal is attributable solely to petitioner's own omissions. *See Van Duyse v. Israel*, 486 F.Supp. 1382 (E.D.Wis.1980).[2] Accordingly, Wells' petition for a writ of habeas corpus must be dismissed.[3]

---

2. In closing argument, counsel for petitioner suggested that the evidence supports a finding that Wells reasonably believed McNeil would preserve his right of direct appeal. Counsel then argued that a showing of "reasonable reliance" was sufficient to establish petitioner's claim under a logic extension of *Perez v. Wainwright*, 640 F.2d 596 (5th Cir. 1981) and *Torna v. Wainwright*, 649 F.2d 290 (5th Cir. 1981). There is no need to consider the appropriateness of such an extension under the facts of this case. Petitioner's allegation throughout the proceedings in this court and in the courts below has been that McNeil explicitly promised to file a notice of appeal. This late change in position to a "reasonable reliance" by Wells is unsupported by the evidence.

3. Failure to perfect a direct appeal does not preclude Wells from seeking state relief by way of the Illinois Post-Conviction Hearing Act for alleged constitutional errors occurring at trial. *See People v. Rose*, 43 Ill.2d 273, 253 N.E.2d 456, 460–61 (1969); *United States ex rel. Morano v. Wolff*, 511 F.Supp. 66, 67 (N.D.Ill.1980).