(No. 41610.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOSEPH ROSE *et al.*, Appellants.

*Opinion filed November 26, 1969.*

274

WARD, J., took no part.

PHILIP M. BASVIC and CHARLOTTE S. ADELMAN, both of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JAMES KAVANAUGH, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Petitioner Joseph Rose was found guilty of rape and Hugo Mattes was found guilty of attempted rape in a bench trial in the circuit court of Cook County on June 12, 1962. They were each voluntarily absent from court on the original and subsequent dates set for sentencing, and sentences of 15 to 30 years for Rose and 8 to 14 years for Mattes were ultimately imposed in *absentia* on December 5, 1962.

Petitioners were apprehended and incarcerated in 1965, and thereafter sought leave to file late appeals before both the appellate and Supreme courts of Illinois. Being denied leave to appeal, petitioners filed a petition for a post-conviction hearing under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1967, ch. 38, par. 122—1 *et seq.*) After hearings before the original trial judge, the State's motion to dismiss was sustained. The petitioners here appeal that dismissal.

The following is a brief summary of the trial testimony of the complaining witness. On March 19, 1962, she went to 1635 Lunt Avenue in Chicago, pursuant to an advertisement for apartment rental. She was met by Rose, who owned the building and had advertised the apartment which interested her. He and Mattes shared another apartment in which Rose alone met her. He showed the rental apartment to her, and they also toured other apartments in the building. In reply to her statement that the apartments appeared

well-kept, Rose noted that his tenants were all pleased, and that one tenant had even sent him a gift of fruit punch from Ecuador. Then he told her that another party had earlier expressed an interest in the available apartment and he expected that party to return the next evening at 6:00 P.M. with his decision whether to take it. At Rose's suggestion, complainant agreed to return the next evening to make final arrangements for rental if the other party decided not to take the apartment.

When she returned at 6:00 P.M. March 20, she asked to see the available apartment again. After seeing it, Rose suggested that she wait in his kitchen until the other party arrived, so that he could deal with the party alone. While waiting, Rose again mentioned the Ecuadorian punch and offered complainant a glass. She accepted, and he took two already filled glasses from his refrigerator. He suggested that she drink her glass quickly, to get the full effect. Within 30 minutes she began to feel ill and wanted to go home. Rose, however, urged her to lie down in the bedroom, assuring her she would feel better soon. She then lost consciousness and regained it as she felt Rose pulling at her clothes. She drifted back into unconsciousness only to awaken nude, while Rose, also nude, was having intercourse with her. She then saw Mattes walking in the bedroom nude. Rose got off the bed and Mattes then attempted to have intercourse with her. Although she was unable to move her arms and legs to resist him, he desisted when she shouted in protest. Later, after recovering somewhat, she felt ill and went to the washroom to vomit. The petitioners then refused her request for her clothes, and tried to get her to drink something, saying it would flush the poison out of her system. They next forced her to eat some pizza, and then allowed her to dress. After again trying to force her to drink a liquid, they called a cab for her and she left in it about midnight.

She complained to the cab driver, "How can people be

so horrible?" Arriving at her own apartment building, she entered the building and went to her apartment where she showered and went to bed. The next morning as she was leaving her apartment to go to work she met a neighbor. Reminded then of the events of the previous night, she mentioned them to the neighbor and was taken to the police station. The police took her to the hospital for an examination and later arrested Rose and Mattes.

The petitioners have maintained that Rose gave complainant a drink of scotch and gingerale, some time after which she went to the washroom. She then came out and mentioned that she felt ill, and asked if she could lie down for awhile. After ten minutes, Rose knocked on the door of the bedroom where she was resting, and asked if he could come in. She said he could, and upon entering Rose saw her lying nude on the bed. Rose claims that she gave her consent to the intercourse which followed. Later that evening, Mattes returned to the apartment and spoke briefly with Rose and complainant, both still nude in the bed. Shortly thereafter he suggested ordering a pizza which was delivered about 11:00 P.M. After eating some pizza, complainant dressed and then left in the cab which had been called for her. The petitioners maintain that no drug was present in the drink given her, that she consented to intercourse with Rose, and that Mattes never approached her.

The petitioners allege six grounds on which they claim their convictions constitute a deprivation of constitutional rights. Three of the allegations are of minor consequence: representation, even though by counsel of their own choosing, was inadequate; the prosecution introduced no evidence, and the sentences were excessive. The remaining three, which require more extensive treatment here, are: the prosecution suppressed evidence favorable to the defense; the prosecution allowed evidence which it knew or imputedly knew was false, to go uncorrected, and the trial judge failed to see that the defendants received a fair and impartial trial.

The prosecution contends first that the petition was not filed within the five-year limit which applies under the applicable act. (Ill. Rev. Stat. 1961, ch. 38, par. 826.) Alternatively, it is maintained that the petitioners' allegations failed to make a substantial showing of violation of constitutional rights.

The Post-Conviction Hearing Act required in 1962 that proceedings be commenced no more than five years after rendition of final judgment. (Ill. Rev. Stat. 1961, ch. 38, par. 826.) The 1965 amendment (Ill. Rev. Stat. 1967, ch. 38, par. 122—1) which increased the time for filing to 20 years, does not apply retroactively. (*People* v. *Lansing,* 35 Ill.2d 247.) The point of concern is the date from which the five-year limitation begins. Petitioners were found guilty July 13, 1962, sentenced on December 5, 1962, and filed their petition on December 1, 1967. Thus, if the limitation period began with the verdict, the petitioners were late in filing, while they did file within five years of the sentencing date. In considering whether the time for filing a bill of exceptions in a criminal case ran from the rendition of the guilty verdict or from the date of sentencing this court rejected the argument that the time of "judgment" is the time of the guilty verdict. "The final judgment in a criminal case is the sentence." (*People* v. *Becker,* 414 Ill. 291, 295; see also *People* v. *Kidd,* 401 Ill. 230.) Furthermore, although not dispositive in interpreting a statute in 1962, the legislature in 1963 issued the following definition of "judgment": " 'Judgment' means an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court." (Ill. Rev. Stat. 1963, ch. 38, par. 102—14.) Clearly, petitioners are not barred for failure to file within five years of "final judgment". The fact that, had they not voluntarily absented themselves, sentencing would have been more than five years before the filing, does not alter this determination.

The Post-Conviction Hearing Act provides a separate remedy, the availability of which is not contingent upon exhaustion of any other remedy. As noted by this court in an early inquiry into the Act, "The act does not replace any of the three existing remedies of *habeas corpus,* statutory *coram nobis* or writ of error. The fact that those three remedies exist furnishes no reason or basis as to why the legislature could not properly provide another remedy if in its wisdom another were needed or desirable." (*People* v. *Dale,* 406 Ill. 238, 243.) The concept of *res judicata* clearly does not bar petitioners' claims here, since those claims have not been reviewed, and the present proceedings are timely. On the same basis, waiver does not bar assertion here of constitutional rights. While the petitioners have waived, by failure to appeal, those rights based on mere error in the trial, they are still entitled to assert those constitutional rights which the Post-Conviction Act is designed to protect and preserve. The essence of waiver was reiterated by this court in *People* v. *Ashley,* 34 Ill.2d 402, 408: "We have consistently held that where review *has once been had* by a writ of error, * * * any claim which might there have been raised, but was not, is considered waived." (Emphasis added.) (See *People* v. *La Frana,* 4 Ill.2d 261, 266.) Thus, a party who fails to take an appeal, whether by careful choice, inadvertence, indigence, or as a result of fleeing the jurisdiction as here, may waive claims of error, but any right which may have existed to a post-conviction hearing on the constitutionality of imprisonment will remain undiminished.

To merit a hearing under the Act, a petition must make a substantial showing that the petitioner's constitutional rights have been violated. Unsupported allegations, which are essentially mere conclusions, are not sufficient to require a hearing. (*People* v. *Arbuckle,* 42 Ill.2d 177, 179; *People* v. *Orndorff,* 39 Ill.2d 96, 98-99.) Moreover it is clear that the Act is not properly invoked where the issue is essentially that of petitioner's guilt or innocence. (*People* v. *Dale,*

406 Ill. 238, 245.) Petitioners here allowed their time for appeal to lapse, and they may not use the Post-Conviction Hearing Act as an alternative medium for review of non-constitutional issues. Yet, a dismissal of a petition is "warranted only if the allegations of fact, liberally construed in favor of the petitioner, fail to make a showing of imprisonment in violation of the Federal or State constitution." *People* v. *Bernatowicz,* 413 Ill. 181, 184-85, *cert.* denied (1953) 345 U.S. 928, 97 L. Ed. 1358, 73 S. Ct. 788; *People* v. *Jennings,* 411 Ill. 21, 26.

Turning to the petitioners' allegations, it is apparent that several are insufficiently supported, and do not make a substantial showing of facts constituting a violation of constitutional rights. It is alleged that the trial counsel chosen by petitioners was inadequate. Poor representation by an attorney of the defendant's own choice does not ordinarily constitute a violation of due process requirements. (*Mitchell* v. *People,* 411 Ill. 407, *cert.* denied 343 U.S. 969, 96 L. Ed. 1364, 72 S. Ct. 1065; *People* v. *Pierce,* 387 Ill. 608, 615.) While the petition does raise questions as to the trial counsel's effectiveness, his efforts were clearly not shown to be "of such low caliber as to amount to no representation and to reduce the trial to a farce"; and therefore the allegation of inadequate counsel is insufficient to raise a constitutional issue. *United States* v. *Ragen,* 166 F.2d 976, 980-81; *People* v. *Stephens,* 6 Ill.2d 257, 259-60.

The allegations that the prosecution introduced no evidence is clearly not sufficient upon an examination of the record. Nor is the contention that the petitioners' sentences are excessive and may be adjusted in a post-conviction hearing well founded. It is maintained that petitioners were denied equal protection and that their sentences constituted cruel and unusual punishment, but that clearly is not established. The sentences were within the statutory limits of life imprisonment for rape. (Ill. Rev. Stat. 1961, ch. 38, par. 11—1) and 14 years for attempted rape (Ill. Rev. Stat.

1961, ch. 38, par. 8—4.) "It is the universal rule, consistently adhered to by this court, that a sentence within the maximum term fixed by the legislature, is not cruel and unusual punishment prohibited by the constitution." *People v. Dolgin*, 6 Ill.2d 109, 112.

The petitioners claim that the prosecution used evidence which it knew, or imputedly knew, to be false, and allowed false evidence to go uncorrected. The allegation is based essentially upon apparent inconsistencies in the testimony of the complaining witness, which the petitioners claim were instances of perjury. One such instance involved complainant's testimony that when she returned home after the alleged rape she met no one in the building while going to her apartment. This is said to contradict later testimony to which a State objection was sustained, that she met her roommate in her apartment. There is no clear contradiction here, and a claim that the prosecution failed to correct her testimony must first clearly establish that the testimony was false. A similar allegation rests on the complainant's various statements regarding the use of force by the petitioners, and other statements in which she said no force was used in the rape. This contradiction, if clearly established, would be quite significant in a typical forced-rape case. However, in this case the complainant stated that she was drugged, and unable to resist. Her statements that the petitioners "forced" her to eat a pizza, and tried to "force" a drink down her throat, are not clearly contradicted by statements to the effect that the rape was accomplished without force. Any superficial contradiction which may appear can easily be explained by the complainant's various interpretations of the word "force" in the several contexts. Another claim asserts a contradiction between the hospital report of the examination made the following morning, and the police report and complainant's testimony. The hospital report states that the complainant arrived alone, and the police were called by the hospital. Complainant testified, and the police

report confirmed, that she went to the police and was taken by them to the hospital. The petitioners claim that the hospital report should be deemed sufficient showing that the prosecution used evidence and testimony which it imputedly knew was false. While we agree that a conflict has been shown, we do not find that the petitioners have made a "substantial showing" that the complainant's testimony and the police report were false.

Where the prosecution knowingly allows false testimony to stand uncorrected, even if it goes only to the credibility of the witness and not the guilt of the defendant, due process has been violated. (*Napuc v. Illinois* (1959), 360 U.S. 264, 269-70, 3 L. Ed. 2d 1217, 79 S. Ct. 1173, 1177.) However, it would be more accurate to characterize these matters as discrepancies or inconsistencies and we find no showing that false testimony ocurred. Thus, while the establishment of false testimony would present a constitutional issue, "Any inconsistencies in the witness's testimony go only to the weight and credibility of the evidence and present no constitutional questions." *People v. Orndoff*, 39 Ill.2d 96, 100.

The next contention of the petitioners is that the prosecution suppressed evidence favorable to the defense. The first piece of evidence allegedly suppressed was a hospital blood test which the petitioners claim would show that no drug had been administered to the complainant. The record shows that the test would not have been relevant on that question, since the test was made only to determine whether the complainant was pregnant and whether she had syphilis. No test was made to determine the presence of a drug, and thus no results of a test probative on that issue could have been suppressed. Similarly, petitioners allege that the prosecution suppressed the results of a crime laboratory examination of complainant's blouse, which test petitioners claim would establish the absence of a drug in the drink given to complainant. This claim is based on the assertion that the complainant regurgitated on the blouse after drinking the liquid

which she alleged caused her drugged condition. This contention is not borne out by the record, which indicates that the complainant was not wearing the blouse when she attempted to regurgitate. Thus, even if the test would show the absence of a drug on the blouse, it would not be relevant to the question of whether complainant was drugged. In short, the petitioners have failed to show that the evidence alleged to have been suppressed would have been favorable to the defense.

The petitioners finally allege that they did not receive a fair and impartial trial, due to the prejudice of the judge in the bench trial. The main claim is that the judge was unfair and partial in limiting the defense's recross-examination of the complaining witness. The relevant portions of the testimony are as follows:

*REDIRECT:*

"Q. Now, I believe you also testified on cross-examination that you went to your apartment after this [the alleged rape] and you took a shower, is that correct?

A: Yes."

*RECROSS:*

"Q: Did anybody live in your apartment on Sheridan Road?

A: Yes.

Q: And was that party at home that night, that is the night between the 20th and 21st?

A: Yes.

Q: And you occupied the same bed?

A: Yes.

PROSECUTION: Object, Your Honor, outside the scope of redirect. I confined my redirect examination to the morning of the 21st of March.

DEFENSE: Well, I am calling her attention to that evening, Your Honor. It was around midnight when she

said she left so I want to identify the evening of March 20th and the morning of March 21st.

THE COURT: If I understand your question, was there somebody lived in the same apartment that she lived in.

DEFENSE: That's right, and she said yes, and she answered that the party was there that night and I want to identify this person as a woman, I am not trying to be cagey. It is a girl, isn't it?

THE COURT: I am trying to keep her out of the record, to be perfectly frank with you. There is nothing in the redirect about whether she shared an apartment with anybody else. The objection will be sustained."

Subsequently, a defense request to call the complainant back for cross-examination rather than recross was denied.

This colloquy at the trial must be further examined in the light of the same judge's comments during the post-conviction petition hearings. The judge recalled many details of the trial, although it was six years later. Most disturbing, however, is the following recollection, for which no basis exists in the trial record:

"THE COURT: Well, as I remember that point, I may be wrong, but the reason she didn't say anything to her roommate was because she and her roommate were as far apart as the north and south pole.

DEFENSE: That's not in the record, Judge.

THE COURT: Maybe I am wrong, but this is how I remember it. She wasn't talking to her roommate. As a matter of fact, the reason she went to this place, Mr. Rose's place, was because she wanted to get another apartment or room away from this girl.

DEFENSE: It's not in the record.

THE COURT: Well, I may be wrong, but this is something I remember. If I'm wrong, I'm wrong."

The issue at the trial was essentially one of consent, or

lack of consent, by the complainant. Clearly corroboration, or lack of corroboration, of the complainant's charge is of utmost importance in such a case. Indeed, the facts alleged by the complainant here render the element of corroboration even more crucial. Her claim of drugging explains away much evidence which would otherwise be relevant to the issue of consent—particularly, the absence of torn clothing, bruising or other signs of force which frequently appear in normal forcible rape situations. Thus, with virtually no physical evidence in corroboration, and no independent physical evidence of drugging, the importance of her fresh complaint or failure to complain at an early opportunity is elevated to exceptional proportions. This is particularly true in light of the fact that complainant, while apparently upset and crying during the cab ride home, made no complaint that night and, until she talked to her neighbor, intended to follow her normal routine of going to work the next day.

While the trial judge is entitled to broad discretion in the allowance of recross-examination, his concern must always remain the impartial pursuit of justice and the full truth. The restriction of the defense from pursuing, even on recross-examination, a matter of such relevance as complainant's failure to make a fresh complaint must be considered carefully. The judge frankly stated that a desire to keep the roommate out of the record was partially responsible for his decision to sustain the State's objection. It also appears that he might have based his decision upon evidence received off the record, since his recollections of the trial indicate that he believed the complainant's failure to complain to her roommate was explained by their "distant" relationship. If information to that effect did in fact reach the judge outside the record and motivated, even in part, the restriction of recross-examination of the complainant, a denial of due process occurred.

This court cannot now consider whether the prosecution's objection was incorrectly sustained as a matter of evidence.

Such an issue is relevant on a direct appeal, not in a proceeding under the Post-Conviction Hearing Act. We are limited here to issues which relate to violation of petitioner's constitutional rights, but the right to a fair and impartial trial is guaranteed by both the Federal and State constitutions. U.S. Const. amend. VI; Ill. Const., art. II, sec. 2.

The circumstances here and trial judge's comments amount to a sufficient showing of prejudice to the petitioners' constitutional right to a fair and impartial trial to require explanation at an evidentiary hearing. Since the trial judge may well be called as a witness therein, such hearing will be held before a judge other than the judge who presided at the trial.

The judgment of the circuit court of Cook County is reversed and this cause remanded with directions to proceed in accordance with this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.