THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN PAUL TRIPP, Defendant-Appellant.

Fifth District   No. 5—92—0550

Opinion filed August 2, 1993.

Bruce D. Stewart, of Stewart, Lambert & Beggs, of Harrisburg, for appellant.

Terry M. Green, State's Attorney, of Benton (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

On November 28, 1988, defendant, Stephen Paul Tripp, pleaded guilty to two counts of theft and four counts of murder in the deaths of two different victims. Defendant was subsequently sentenced to natural life imprisonment. Three years later, defendant filed a post-conviction petition alleging his pleas were involuntarily entered because he was never properly admonished that the minimum sentence for multiple murders was mandatory life imprisonment. Following an evidentiary hearing, defendant's petition for

post-conviction relief was denied. Defendant appeals and raises two issues for review: (1) whether the trial court erred in denying the petition for post-conviction relief because defendant was denied due process of law by the trial court's failure to advise him, prior to acceptance of his guilty pleas, that the minimum sentence for multiple murders was natural life imprisonment and (2) whether the trial court erred in denying defendant's petition for post-conviction relief because defendant was denied effective assistance of counsel by his attorney's failure to advise him, prior to the entry of his guilty pleas, that the minimum sentence for multiple murders was natural life imprisonment. We reverse the trial court's order denying post-conviction relief; we vacate defendant's murder convictions and we remand to the circuit court with directions that defendant be allowed to plead anew.

On October 26, 1986, the bodies of Rick Stroud and George Brunton were discovered at Brunton's farm in Franklin County, Illinois. Both victims had been beaten, shot, and robbed. Eighteen months later, defendant was apprehended in New Mexico; he confessed to the crimes and was returned to Illinois. Originally, defendant pleaded not guilty to the double murder, but he entered a change of plea on November 28, 1988.

At the plea hearing, the court was informed that in exchange for defendant's pleas of guilty to all six charges, the State had agreed to waive the death penalty. Defendant was informed of the nature of the charges against him. He was further admonished that he had a right to remain silent, that he had a right to persist in his not-guilty plea, and that if he pleaded guilty he was waiving his right to a jury trial and the right to confront the witnesses against him. (134 Ill. 2d Rules 402(a)(1), (a)(3), (a)(4).) With respect to the minimum and maximum sentence which could be imposed, the trial court advised defendant that he could be sentenced to a determinate term of 20 to 40 years' imprisonment or an extended term of 40 to 80 years' imprisonment and that the maximum *possible* sentence was natural life imprisonment. (134 Ill. 2d R. 402(a)(2).) Defendant acknowledged that he understood the possible range of sentences recited by the court. The court accepted defendant's pleas, entered judgment on the verdicts, ordered a presentence investigation report, and set the cause for sentencing six weeks hence. The parties do not now dispute that the court's admonishment on the range of penalties was erroneous as section 5—8—1 of the Unified Code of Corrections mandates a minimum sentence of

natural life imprisonment for multiple murders. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(c).

The parties appeared at sentencing prepared to put on evidence in aggravation and mitigation. Apparently, by this time, the trial judge discovered that the statute provided a mandatory term of natural life imprisonment. The sentencing transcript is three pages long and provides in pertinent part:

> "THE COURT: Okay, I would point out to those present here that in this particular case the statute provides that a person found guilty of murdering more than one victim shall be sentenced to a term of natural life imprisonment. That factor has been discussed with the defendant and he has indicated through his attorney that the Court should go ahead and impose that sentence and that there would be no necessity to put on any factors in aggravation or mitigation in any kind of attempt to reduce the sentence down to one of a determinate sentence to the Department of Corrections. The Court, under that particular section, has no alternative but to impose a mandatory natural life term of imprisonment. So, with regard to Count I and Count IV of the Indictment, this Court will impose a term of natural life in prison. Counts II and III, the Judgments of conviction will be vacated. With regard to the offense of Theft, *** Counts V and VI, the Court will impose a term of 5 years on each of those, to run concurrently. There is no provision, of course, for mandatory supervised release on a natural life sentence.
>
> Now, Mr. Tripp, do you have any question at all about that sentence?
>
> DEFENDANT: I guess not, Your Honor."

The court then informed defendant of his right to appeal and the necessity of filing a motion to withdraw his guilty pleas under Supreme Court Rule 604(d). (134 Ill. 2d R. 604(d).) Defendant did not file a motion to withdraw his guilty pleas; no direct appeal was taken.

On January 9, 1992, defendant filed a petition for post-conviction relief alleging he was denied due process of law and effective assistance of counsel because neither the court nor his counsel advised him, prior to entry of his pleas, that the minimum possible sentence for murdering more than one person was natural life in prison. Defendant alleged these failures rendered his pleas involuntary. He requested that his convictions and sentence be vacated and that he be allowed to plead anew.

Defendant's petition for post-conviction relief proceeded to hearing on July 30, 1992. Defendant testified that he was never advised by his attorney or the court, prior to acceptance of his guilty plea, that the minimum sentence which must be imposed would be natural life imprisonment. Tripp further testified that it was his understanding at the time he pleaded guilty that he could possibly receive a sentence ranging from 20 to 80 years' imprisonment. His pleas were entered in reliance on such a possibility. He further testified that he would not have pleaded guilty had he known the minimum mandatory term was natural life imprisonment. Tripp also testified that on the date of the plea hearing, he was under the influence of prescription medication which affected his ability to understand the nature of the proceedings at that time. On cross-examination, defendant admitted that at the time his pleas were entered, the court advised him that the maximum possible penalty which could be imposed was natural life imprisonment. However, Tripp testified that the first time he was advised that natural life imprisonment was, in fact, the minimum penalty that could be imposed was on the date of sentencing.

Bernard Paul, defendant's attorney at the time of the plea and the sentencing hearing, was called as a witness for the State. Counsel testified that just prior to the sentencing hearing, the judge held an in-chambers conference with the two attorneys. Defendant was not present at the conference. At this meeting, the judge advised the attorneys that he had just discovered that defendant must be sentenced to natural life imprisonment. The judge told counsel that he should advise his client that he could persist in his pleas and be sentenced to natural life or he could withdraw his guilty pleas. Counsel testified that he then conducted a private conference with defendant and several of defendant's family members. Mr. Paul testified that he advised defendant that he could persist in his pleas and be sentenced to natural life or he could withdraw his guilty pleas, but if he did withdraw his guilty pleas the State would have the option of seeking the death penalty. Counsel was not sure whether he told defendant that he could move to withdraw his pleas that very day or whether he told defendant he could file such a motion within 30 days. Counsel stated that the private discussion with his client took between 30 to 45 minutes, and at the end of the discussion, defendant decided to persist in his pleas. Mr. Paul testified that he never advised his client to persist in the pleas in order to avoid the possibility of the death penalty. He left that decision up to defendant. Counsel further stated that although defendant was up-

set, he appeared coherent throughout the discussion, and counsel believed defendant fully understood the implications of persisting in his pleas. On cross-examination, counsel readily conceded that, at the time of the plea hearing, both attorneys and the judge were under the mistaken impression that defendant could be sentenced to a minimum term of 20 years' imprisonment.

At the post-conviction hearing, the judge stated that it was his recollection that, at the time of sentencing, he advised Mr. Paul to tell his client that he could either persist in his pleas and receive a natural life sentence or he would be allowed to withdraw the pleas. After the judge made his statement, Mr. Paul testified that this comported with his own recollection of what had occurred on the day of sentencing.

Defendant countered that the discussion with his attorney took only about five minutes. He admitted that his attorney advised him of the mandatory life term and that this information upset him. However, defendant testified that his attorney did not tell him that he could withdraw his guilty pleas that very day. Defendant did admit that counsel advised him that he could change his pleas "within a certain period of time, afterwards." Furthermore, defendant conceded that, after he was sentenced, the court advised him about "some time limit" to withdraw his pleas. Finally, defendant testified that he believed his only option was to accept the sentence of mandatory life imprisonment and that counsel advised him to persist in his pleas. At the conclusion of the hearing, defendant's petition for post-conviction relief was denied. This appeal ensued.

■ As a preliminary matter, we must address the State's contention that the defendant has waived any allegations of error by failing to file a motion to withdraw his guilty pleas and perfect a direct appeal. However, the law is well settled that defendant does not waive the right to proceed under the Post-Conviction Hearing Act (725 ILCS 5/122—1 et seq. (West 1992)) by failing to file a post-trial motion or a direct appeal. (See *People v. Rose* (1969), 43 Ill. 2d 273, 279, 253 N.E.2d 456, 460-61; *People v. Tice* (1992), 235 Ill. App. 3d 118, 119, 600 N.E.2d 920, 921.) As our supreme court has noted, the Post-Conviction Hearing Act provides a separate remedy, the availability of which is not contingent upon exhaustion of any other remedy. (*Rose*, 43 Ill. 2d at 279, 253 N.E.2d at 460.) While failure to take a direct appeal may waive claims of nonconstitutional error, it does not bar review of constitutional claims raised in a post-conviction petition. (See *Rose*, 43 Ill. 2d at 279, 253 N.E.2d at 461.) As defendant herein raised claims of constitutional magni-

tude in his petition for post-conviction relief, these claims are properly before us.

Defendant first alleges the trial court erred in denying his post-conviction petition because the record clearly demonstrates that his due process rights were violated by the trial court's failure to admonish him, prior to acceptance of his pleas, that the minimum sentence for the murder of more than one person was natural life imprisonment.

In *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, the United States Supreme Court held that due process of law requires that the *record* in a criminal case affirmatively establish that the guilty plea was made knowingly and voluntarily and with a full understanding of its consequences. In *Boykin*, the record was silent as to what admonishments, if any, were given to defendant prior to acceptance of his guilty plea. In reversing the conviction, the Court stated as follows:

> "It was error, plain on the face of the record, for the trial judge to accept the petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. ***
>
> * * *
>
> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (*Boykin*, 395 U.S. at 242-44, 23 L. Ed. 2d at 279-80, 89 S. Ct. at 1711-12.)

In discussing the impact of *Boykin*, our supreme court has noted:

> "The constitutional requirement for a valid plea of guilty is that it be intelligent and voluntary, and as we said in *People v. Reeves* [(1971)], 50 Ill. 2d 28, 29[, 276 N.E.2d 318, 319], '*Boykin* adds the requirement that if the guilty plea is to withstand appellate or post-conviction review "*the record* must affirmatively disclose that the defendant who pleads guilty enters his plea understandingly and voluntarily." (*Brady v. United States* [(1970)], 397 U.S. 742, 747 footnote (4), 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1468.)' " (Emphasis added.) *People v. Wills* (1975), 61 Ill. 2d 105, 110-11, 330 N.E.2d 505, 508.

■ Supreme Court Rule 402 was adopted to ensure compliance with the *Boykin* requirement that the record affirmatively disclose that the guilty plea was understandingly and voluntarily entered.

(*Wills*, 61 Ill. 2d at 111, 330 N.E.2d at 508.) Rule 402 governs the procedures on guilty pleas. The rule provides in pertinent part:

"The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

\*\*\*

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences. (134 Ill. 2d R. 402(a)(2).)

Subparagraph (a)(2) of the rule specifically provides that a guilty plea shall not be accepted unless the defendant is personally admonished in open court of the minimum and maximum penalties which can be imposed. At the time of the plea hearing, the court advised defendant that the minimum term which could be imposed was 20 years' imprisonment and the maximum term was life behind bars. Such admonishment was clearly erroneous as section 5—8—1 of the Unified Code of Corrections provides for a *mandatory* minimum term of life imprisonment upon convictions for multiple murders. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(c).) Defendant asserts that the court's failure to advise him on the minimum sentence prescribed by law renders his plea involuntary and merits vacatur of his convictions for double murder. Defendant contends the court's failure to advise him of the minimum term severely prejudiced him because he would never have pleaded guilty to the double murder had he known he would spend the rest of his life in the penitentiary.

The State counters that not every violation of Rule 402 amounts to a constitutional deprivation because a plea of guilty is valid if there is "substantial compliance" with the rule. The State argues that, notwithstanding the erroneous admonishment regarding the possible penalties, the trial court substantially complied with the rule because defendant received the benefit of the plea bargain made with the State. That is, the State contends that as defendant entered "open" pleas to the double murder in exchange for the State's waiver of the death penalty, then the imposition of any sentence (other than death) would have been permissible. As defendant was admonished that natural life imprisonment was the maximum possible sentence, then defendant cannot now claim unfairness or surprise by the imposition of that sentence. Alternatively, the State asserts that assuming *arguendo* the pleas were rendered invalid by

the improper admonishment, this defect was nevertheless cured by the subsequent discussions which took place on the date of sentencing. As a final alternative, the State argues that even if the court's admonishments were deficient, they were not so egregious so as to now entitle defendant to withdraw his pleas. The State reasons that if defendant were erroneously advised that he could receive a determinate prison term, this error merely created in defendant an expectation that he could present evidence which would mitigate his sentence from natural life to a term of years. At most, the error defeated defendant's expectation of a full sentencing hearing wherein he could present mitigating evidence. The State argues that defendant's remedy, if any, is a remand for a sentencing hearing at which the circuit court may consider a penalty range from 20 years' to natural life imprisonment. We disagree.

■■ We first note that this is not a "benefit of the bargain" case in which the defendant points a finger at the prosecution and claims vacatur of his guilty plea is warranted because of the prosecution's failure to live up to its part of the plea bargain. Instead, this is an improper-admonishment case in which defendant alleges error on the part of the *court* and *counsel* for their failure to advise him of the minimum penalty which must be imposed when a defendant pleads guilty to multiple murders. Defendant's allegations clearly implicate Supreme Court Rule 402, which governs the acceptance of guilty pleas. The requirements of Rule 402 still must be satisfied irrespective of the nature of the bargain entered into by the parties. As defendant is not seeking to enforce a plea agreement, we find untenable the State's position that the only appropriate remedy is a remand for a new sentencing hearing where the full range of sentences originally suggested to defendant at the time of a plea hearing would be available to him. A remand with directions to the trial court to conduct such a hearing would be an exercise in futility; as the statute requires a minimum mandatory term of natural life imprisonment, neither this court nor the circuit court would have the power to impose any sentence less than natural life imprisonment.

We next concede the State's point that every deviation from the requirements of Supreme Court Rule 402 does not require reversal; that the plea was intelligent and voluntary may be shown by "substantial" rather than literal compliance with the provisions of the rule. (*People v. McCoy* (1979), 74 Ill. 2d 398, 402, 385 N.E.2d 696, 698.) Noncompliance with the rule reaches constitutional dimension only if defendant can demonstrate that the noncompliance affected

the intelligent and voluntary nature of his plea. See *People v. White* (1976), 39 Ill. App. 3d 770, 772, 350 N.E.2d 556, 558.

It has been stated that a guilty plea is rendered involuntary if the court fails to advise defendant of the possible minimum sentence or recites a possible minimum penalty lower than that authorized. (See *People v. Price* (1990), 196 Ill. App. 3d 321, 326, 553 N.E.2d 760, 763.) The purpose of the requirement to advise defendant of the maximum and minimum penalty which can be imposed is to ensure that defendant makes a voluntary and intelligent decision by understanding all the possible consequences of his decision. Thus, when a defendant has been advised the minimum sentence is less than it actually is, he cannot be deemed to have made an intelligent decision because the range of possible penalties is greater than he believed. (*Price*, 196 Ill. App. 3d at 326, 553 N.E.2d at 763.) Moreover, our supreme court has specifically held that a plea of guilty to the murder of more than one person is involuntary if the trial court fails to inform defendant that the minimum penalty which can be imposed is mandatory life imprisonment. *People v. Kidd* (1989), 129 Ill. 2d 432, 446-47, 544 N.E.2d 704, 710.

■ In *Kidd*, defendant made open pleas of guilty to nine counts of murder in exchange for the State's promise to dismiss lesser charges. Defendant knew the State was seeking the death penalty. Prior to accepting defendant's pleas, the court admonished defendant: "[W]hether or not a life sentence, that is something that is controlled by the statute. I have no control over that." (129 Ill. 2d at 440.) Defendant's pleas were accepted and he was subsequently sentenced to death. He then filed a motion to withdraw his guilty pleas, alleging he was never informed of nor did he understand the minimum sentence which could be imposed. Defendant's motion to withdraw his pleas was denied. On appeal, the supreme court vacated the convictions and remanded with directions that defendant be allowed to plead anew, holding that the trial court's reference to "a life sentence" "controlled by statute" did not adequately convey to defendant that the minimum sentence was mandatory life imprisonment. The improper admonishment rendered the pleas involuntary. Similar cases are in accord. (*People v. Didley* (1991), 213 Ill. App. 3d 910, 572 N.E.2d 423 (failure to admonish defendant of mandatory supervised release term rendered plea involuntary); *People v. O'Toole* (1988), 174 Ill. App. 3d 800, 529 N.E.2d 54 (post-conviction relief granted where defendant not admonished that "flat" 10-year prison term carried additional two-year term of mandatory supervised release).) The State attempts to distinguish *Kidd* on the

basis that defendant herein was advised at the plea hearing that a mandatory life term was at least a possibility. However, it cannot be seriously argued that the *possibility* of life imprisonment can be equated with a *mandatory* life term. We have previously rejected a similar argument, and we do so again. See *People v. Brown* (1991), 217 Ill. App. 3d 66, 576 N.E.2d 887.

We must now consider the primary issue in this case, that is, whether the defect in the plea hearing was remedied by subsequent events that took place on the date of sentencing. Specifically, we must decide the following question: if defendant's pleas were rendered involuntary by the trial court's failure to admonish him of the mandatory life term, was this defect cured by an off-the-record discussion, unaudited by the court, in which counsel advised defendant of the mandatory life term and defendant persisted in his pleas? The State contends that review of the entire record, including the post-conviction testimony, clearly indicates that defendant's persistence in his pleas was voluntarily and intelligently made and, therefore, there is no reversible error. Defendant counters that if due process requires that the record affirmatively disclose that the guilty plea was voluntarily and intelligently made, then that constitutional requirement cannot be satisfied by an off-the-record discussion in which the court took no part. We agree with defendant. We hold that, based on the facts of this case, the private discussion which took place between defendant and counsel cannot substitute for the type of proceeding contemplated by Supreme Court Rule 402.

Entry of a valid guilty plea in compliance with Rule 402 requires that the *trial judge* determine that the plea is knowing and voluntary (*People v. Huante* (1991), 143 Ill. 2d 61, 70, 571 N.E.2d 736, 740.) To ensure that the defendant enters his guilty plea knowingly, the judge must advise the defendant of the nature of the charges and the minimum and maximum sentence as prescribed by law. (*Huante*, 143 Ill. 2d at 70, 571 N.E.2d at 741.) Furthermore, the court shall not accept the plea without first addressing the defendant *personally in open court*. (134 Ill. 2d R. 402(a).) We find instructive subparagraph (d)(2) of the rule, which provides that if the court concurs or conditionally concurs in the plea agreement, such concurrence shall be stated for the record, but if the judge later determines *before sentencing* that a more severe disposition is called for, he must so advise the defendant and give him an opportunity to withdraw the plea. (134 Ill. 2d R. 402(d)(2) & Committee Comments, at 341.) This subparagraph applies "in addition to the preceding paragraphs" (134 Ill. 2d R. 402(d)), thus

incorporating by reference the requirement that defendant be admonished in open court.

■ Here, there is no indication in the sentencing transcript that defendant was personally advised in open court that the previous admonishment regarding the penalty range was erroneous and that he would have to accept the mandatory life term or withdraw his pleas. The State contends, however, that the post-conviction testimony clearly indicates that counsel advised defendant of the mandatory term and of his right to withdraw his pleas but, nevertheless, defendant persisted in pleading guilty. Therefore, reasons the State, because defendant was properly admonished by his attorney, this court should consider his pleas voluntarily and intelligently made. We decline to do so. In *People v. Weakley* (1970), 45 Ill. 2d 549, 259 N.E.2d 802, the supreme court reversed the trial court's order denying post-conviction relief and remanded the cause where the record did not show that the trial court had personally advised the defendant of the maximum term prescribed by law even though defendant's attorney had done so out of court. In that case, the trial judge did not participate in nor did he audit the out-of-court discussion but merely presumed that counsel's admonishment as to the maximum term was accurate and adequate. The supreme court held that the trial court's duty to personally address the defendant in open court cannot be delegated to counsel. The law is well settled that it is the responsibility of the court, and not counsel, to inform defendant of the minimum and maximum sentences prescribed by law for the offense to which he is pleading guilty. (*People v. Packard* (1991), 221 Ill. App. 3d 295, 581 N.E.2d 837; *People v. Brown* (1991), 217 Ill. App. 3d 66, 576 N.E.2d 887; *People v. Jones* (1985), 135 Ill. App. 3d 1023, 482 N.E.2d 1031.) Here, there was no direct colloquy between the court and the defendant other than the court's perfunctory question as to whether or not defendant understood his sentence. This perfunctory inquiry was insufficient to show that defendant's persistence in his pleas was knowingly and voluntarily made. We note that while defendant testified his attorney advised him of the mandatory term, he also testified he did not understand he could withdraw his pleas that very day. The trial judge's statement at the post-conviction hearing that he had so advised counsel such an option would be granted does not amount to an affirmative showing of record that *defendant* was so advised. We cannot accept the State's position that defendant's persistence in his pleas was voluntary because he was admonished by his attorney in an off-the-record discussion in which the court did not participate. To so find would subvert the very purpose of the rule. Rule 402 has two objectives: (1) to in-

sure compliance with *Boykin*'s "affirmative disclosure" requirement and (2) to give visibility to the plea agreement process and thus provide the reviewing court with a record containing an accurate and complete account of all relevant circumstances surrounding the guilty plea. (134 Ill. 2d R. 402, Committee Comments, at 340.) Here, the off-the-record discussion between counsel and defendant scarcely meets the affirmative disclosure requirement of *Boykin*, nor does it "give visibility" to the plea agreement process. Under *Boykin*, due process requires certain safeguards to be afforded to an accused who pleads guilty, including an *on-the-record inquiry by the judge* accepting the plea that it was knowingly and voluntarily entered. (*People v. Boyt* (1985), 109 Ill. 2d 403, 413, 488 N.E.2d 264, 269.) Furthermore, it is the defendant's *understanding* of all possible consequences of his plea which the rule seeks to ensure. (See *People v. Robinson* (1976), 63 Ill. 2d 141, 145, 345 N.E.2d 465, 467.) Whether or not defendant fully understood the implications of his pleas must be demonstrated by an adequate record. The affirmative disclosure requirement of *Boykin* was designed to prevent the very thing which occurred here—an out-of-court admonishment which was neither conducted by the court nor reduced to a transcript. As *Boykin* warned:

> "When the judge discharges that function [insures defendant has a full understanding of the implications of his plea], he leaves a record adequate for any review that may be later sought [citations], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." (*Boykin*, 395 U.S. at 244, 23 L. Ed. 2d at 280, 89 S. Ct. at 1712-13.)

We find manifestly erroneous the trial court's order denying post-conviction relief as scrutiny of the entire record does not demonstrate that defendant fully understood the consequences of his pleas. Basing our holding on due process grounds, we need not address defendant's claims of ineffective assistance of counsel. In light of the foregoing, defendant's murder convictions cannot stand. We reverse the order of the circuit court of Franklin County denying post-conviction relief; we vacate defendant's murder convictions and remand this cause to the circuit court with directions that defendant be allowed to plead anew.

Reversed; murder convictions vacated and cause remanded with directions.

GOLDENHERSH and LEWIS, JJ., concur.