Nos. 2--05--0583 & 2--06--0247 cons.          Filed 2/27/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01--CF--1324 |
| FREDDIE RAMIREZ, | ) ) ) | Honorable Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

In this consolidated appeal, defendant, Freddie Ramirez, appeals from the summary dismissal of two pro se postconviction petitions filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2004)). Defendant contends that each petition was sufficient to state the gist of a constitutional claim and that the trial court should not have dismissed the petitions at the first stage of the postconviction process. Specifically, defendant contends that his trial counsel was ineffective for failing to pursue two filed motions to suppress incriminating statements and for allegedly advising him that the motions were not meritorious. Defendant argues that his subsequent guilty plea was involuntary because he relied on counsel's erroneous representation of the merits of the motions. We disagree and affirm.

BACKGROUND

Defendant and Luis Fernando Vasquez were charged by indictment on April 25, 2001, with five counts of first-degree murder (720 ILCS 5/9--1(a)(1) (West 2004)) in connection with the November 13, 2000, shooting death of Victor Chavez. On October 10, 2001, defendant's counsel filed and set for hearing two pretrial motions, a motion to suppress audiotaped statements obtained through eavesdropping and a motion to suppress statements to the police. Both motions incorporated the following facts. On November 13, 2000, while defendant was at the Waukegan police department being questioned about the Chavez shooting, his attorney, David Weinstein, arrived and informed the officers that he represented defendant and wished to speak with him. A person identified as Captain Johnson informed Weinstein that defendant was being interrogated about the Chavez homicide. Weinstein responded that he wanted the interrogation to stop and that he wished to talk to his client. The police subsequently released defendant. Upon defendant's release, Weinstein informed the police that defendant would not speak further with the police unless he was present.

The motion to suppress audiotaped statements further alleged that on June 13, 2001, Waukegan police detectives went to Shawnee Correctional Center, where defendant was an inmate on an unrelated weapons charge. With assistance from the Illinois State Police and the Department of Corrections, a confidential informant was fitted with eavesdropping equipment. The informant, later revealed to be defendant's mother, Ilona Saa, wore a microphone and transmitter while she met with defendant in a visitation area of the prison. During the recorded conversation between defendant and his mother, defendant allegedly admitted that he shot Chavez. The motion asserted that the statements recorded on the tape during the meeting were obtained in violation of defendant's constitutional rights as set forth in Edwards v. Arizona, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct.

1880 (1981), because defendant's mother was acting as an agent for the State and improperly interrogated defendant without his attorney present, when he had previously invoked his right to counsel.

The motion to suppress statements to the police alleged that on July 5, 2001, Waukegan police detectives interrogated defendant at Statesville Correctional Center, where defendant was transferred on the unrelated weapons charge, and that he admitted shooting Chavez. Like in the first motion, defendant asserted that his admission was obtained in violation of his constitutional rights because he was interrogated without his counsel's presence, when he had previously invoked his right to counsel.

Prior to the hearing set for the motions, defendant entered a negotiated guilty plea to first-degree murder. The State amended count I, removing the language, "with a firearm," thereby barring the use of the 15-year firearm enhancement of the 15-20-25-to-life sentence enhancement statute. See 730 ILCS 5/5--8--1(a)(1)(d)(i) (West 2004). The State also dismissed counts II through V and agreed to limit the sentence to 35 years' imprisonment.

The trial court admonished defendant regarding the consequences of entering his guilty plea. Defendant stated that he understood the charge of first-degree murder and that the charged offense ordinarily carried a sentence of 20 to 60 years' imprisonment. The trial court advised defendant that he had the rights to plead not guilty, to make the State prove him guilty beyond a reasonable doubt at a jury trial, and to choose whether to testify. Defendant stated that he understood these rights and told the court that his guilty plea was not the result of force, threats, or promises other than the terms of the plea agreement. Defendant stated that he understood that, under the plea agreement, the trial court would conduct a sentencing hearing at which it would impose a sentence of between 20 and

35 years in the penitentiary. In addition, defendant acknowledged to the trial court that he previously had the opportunity to talk to his counsel concerning the nature of the charge, his rights under the law, and the possible penalties, and that he did not have any other questions to ask his counsel or the court.

Defense counsel requested that the court address the motions to suppress. The court offered to address those following the State's proffered evidence. The State then proffered that Waukegan police officers would testify that they responded to a report of gunshots on November 13, 2000, and found Chavez lying in a doorway of a residence. Chavez was transported to St. Therese Hospital, where he was pronounced dead. The officers interviewed defendant on November 13 and released him. Subsequently, members of the Waukegan police department had certain conversations with witnesses who indicated that defendant had admitted to shooting Chavez.

On July 5, 2001, Waukegan police officers interviewed defendant, who was in prison. Defendant gave written and oral statements to the police in which he stated that he was driving with Louis Vasquez and Isaac Vasquez when defendant saw someone he recognized as a member of the Latin Kings. Defendant, with Isaac Vasquez, got out of the car "to give the King a beating." The subject, later identified as Chavez, was in front of his residence. Defendant removed a gun from his sweatshirt and shot Chavez once in the neck. Chavez fell to the ground and defendant shot him again. Chavez was still moving and defendant shot him two more times. Defendant also admitted that he ran from the scene.

The State further proffered that a witness, Jose Quinonez, would testify that he heard gunshots and saw two people running from the scene, and that Quinonez's physical descriptions of those individuals would match the physical descriptions of defendant and one of the other men with

-4-

him on November 13. Pathologist Nancy Jones would testify that Chavez died of four gunshot wounds. Defense counsel stipulated to the State's proffer of evidence, the trial court found a factual basis for the plea, and it entered a finding of guilty.

The trial court then informed defendant that if he pleaded guilty, the motions to suppress would have to be withdrawn and would not be considered at a hearing. Defendant told the court that he understood the motions would not be considered and he accepted that fact. Defense counsel added that she and defendant had spent a great deal of time working on the case, going over the facts, and reviewing case law and that it was defendant's decision to plead guilty to the first-degree murder charge. Defendant agreed. The court then advised defendant that he must serve the entire sentence and would not receive any good-time credit.

At the sentencing hearing, Waukegan police detective Charles Schletz testified that he was present at the prison when authorities recorded the conversation between defendant and his mother. Schletz said the taped conversation included defendant's incriminating descriptions of his involvement in Chavez's murder. Schletz testified that he had interviewed defendant's girlfriend, Amy Ledyard. She told him that, on the night of the shooting, she had overheard defendant talking about how "they" had killed or shot a Latin King. Ledyard further told Schletz that during a conversation that she had with defendant, he described how "they" shot Chavez, and he play-acted how it happened, including Chavez's reaction after the initial gunshot to his neck. Ledyard further told Schletz that she had overheard defendant tell his mother about the events of the shooting and what "they" had done.

Thereafter, the trial court sentenced defendant to 34 years' imprisonment and advised defendant that he had the right to appeal but that before doing so, he must file a motion to withdraw

his guilty plea in the trial court within 30 days. Defendant did not file a motion to withdraw his plea or file a direct appeal.

On March 14, 2005, defendant filed pro se his first petition for postconviction relief. Defendant claimed that he received ineffective assistance of trial counsel because she failed to pursue the motions to suppress, which he believed would have been meritorious. Like the motions to suppress, the petition asserted that the police illegally obtained defendant's statements by interrogating him after he had invoked his right to counsel, in violation of his constitutional rights as set forth in Edwards v. Arizona. Defendant alleged that counsel was ineffective because she misled him into believing his motions lacked merit. Defendant further alleged that his guilty plea was involuntary because he pleaded guilty in reliance on counsel's erroneous representation regarding the likely outcomes of the motions. Defendant attached his affidavit and the affidavit of his former attorney, David Weinstein.

The trial court summarily dismissed the petition on April 29, 2005, finding that it was patently without merit and that it failed to raise the gist of a constitutional claim. Following the denial of a motion to reconsider, defendant filed a timely notice of appeal, designated as No. 2--05--0583.

On December 28, 2005, defendant filed pro se a subsequent postconviction petition. He alleged that the subsequent petition was based on trial court transcripts, which he did not have in his possession when the original postconviction petition was filed. The petition further alleged that his trial counsel was ineffective for failing to investigate and locate Captain Johnson, a retired police detective, whose testimony would have been useful for his motions to suppress, and that the State failed to disclose Johnson's whereabouts. In addition, he alleged that he received ineffective

assistance of counsel because his attorney did not advise him on how to file a motion to withdraw his guilty plea. Defendant attached his affidavit. The trial court summarily dismissed the petition, finding that it was patently without merit and that it failed to raise the gist of a constitutional claim. Defendant timely filed a notice of appeal, designated as No. 2--06--0247. We granted the motion to consolidate the appeals.

ANALYSIS

Preliminarily, we address the State's contention that defendant has waived any allegations of error by failing to file a motion to withdraw his guilty plea and perfect a direct appeal. The law is well settled that a defendant does not waive the right to proceed under the Act by failing to file a posttrial motion or a direct appeal. See People v. Rose, 43 Ill. 2d 273, 279 (1969); People v. Miranda, 329 Ill. App. 3d 837, 842-43 (2002); People v. Tripp, 248 Ill. App. 3d 706, 711-12 (1993); People v. Tice, 235 Ill. App. 3d 118, 119 (1992). As the supreme court has noted, the Act "provides a separate remedy, the availability of which is not contingent upon exhaustion of any other remedy." Rose, 43 Ill. 2d at 279. Thus, the doctrines of waiver and res judicata apply to postconviction petitions only in cases "where a petitioner has previously taken a direct appeal from a judgment of conviction." People v. Flores, 153 Ill. 2d 264, 274 (1992). Although defendant could have waived, by failure to appeal, issues of mere trial error, he is "still entitled to assert those constitutional rights which the Post-Conviction Act is designed to protect and preserve." Rose, 43 Ill. 2d at 279. As defendant herein raised claims of constitutional magnitude in his petitions for postconviction relief, these claims are not deemed waived.

We begin our analysis by addressing the applicable law and the standard of review. The Act creates a three-stage procedure for postconviction relief. People v. Gaultney, 174 Ill. 2d 410, 418

(1996). Both of the current petitions were summarily dismissed at the first stage. During the first stage, the trial court reviews the petition within 90 days of filing and determines whether it is frivolous or patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2004). To survive summary dismissal, a pro se petitioner need raise only the "gist" of a meritorious constitutional claim (Gaultney, 174 Ill. 2d at 418), but he must provide affidavits, records, or other evidence to support his allegations or he must explain why none could be obtained (725 ILCS 5/122--2 (West 2004); People v. Collins, 202 Ill. 2d 59, 66 (2002)). The court may also consider the allegations in light of the trial record and may dismiss the petition if they are contradicted by that record. People v. Coleman, 183 Ill. 2d 366, 382 (1998). The State is not entitled to raise any arguments during the first stage. Gaultney, 174 Ill. 2d at 418. Our review of a dismissal at the first stage of postconviction proceedings is de novo. Coleman, 183 Ill. 2d at 388-89.

Defendant contends that the trial court erred in dismissing the first postconviction petition, because his trial counsel was ineffective for not pursuing the motions to suppress and for advising him that the motions were not meritorious. He argues vigorously that the motions would have been granted had the trial court ruled on them. We observe that, contrary to defendant's assertion, his counsel did pursue the motions to suppress, but by pleading guilty, defendant agreed to give up his right to have the motions heard and decided. However, since defendant's argument links the involuntariness of his guilty plea to the allegedly erroneous advice given by his attorney prior to the plea, the argument must be resolved under an effective-assistance-of-counsel analysis. A defendant may enter a guilty plea because of some erroneous advice by counsel, but that fact alone does not destroy the voluntary nature of the plea; it must be shown that the defendant was denied the effective assistance of counsel under the Strickland test. People v. Pugh, 157 Ill. 2d 1, 14 (1993), citing

Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). "This is because a defendant may choose to enter into a negotiated plea of guilty even if he has a meritorious motion to suppress." People v. Cunningham, 286 Ill. App. 3d 346, 350 (1997). Moreover, a proper and meticulous admonition of the defendant according to Supreme Court Rule 402(b) (177 Ill. 2d R. 402(b)) cannot simply be ignored. People v. Radunz, 180 Ill. App. 3d 734, 742 (1989).

Thus, we set forth the well-established principles that must be considered under Strickland. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, as measured by reference to prevailing professional norms, and that the substandard representation prejudiced the defendant. Strickland, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65; People v. Franklin, 135 Ill. 2d 78, 116-17 (1990); People v. Albanese, 104 Ill. 2d 504, 526 (1984) (adopting Strickland). "In order to satisfy the 'prejudice' requirement in a plea proceeding, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." Pugh, 157 Ill. 2d at 15. A defendant's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Whether a plea of guilty is unintelligent and vulnerable to attack depends not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. People v. Correa, 108 Ill. 2d 541, 553 (1985), citing McMann v. Richardson, 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49 (1970). A plea based on reasonably competent advice is an

intelligent plea not open to attack on the grounds that counsel erred in his judgment. McMann, 397 U.S. at 770, 25 L. Ed. 2d at 773, 90 S. Ct. at 1448. "[T]hat another attorney might have pursued a different strategy is not a factor in the competency determination." People v. Palmer, 162 Ill. 2d 465, 476 (1994). "Counsel's strategic choices are virtually unchallengeable." Palmer, 162 Ill. 2d at 476.

As stated in McMann:

"[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*** That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty." McMann, 397 U.S. at 769-70, 25 L. Ed. 2d at 772-73,

90 S. Ct. at 1448.

We do not find that defendant's plea of guilty is open to attack on the ground that counsel may have misjudged the likelihood of success of defendant's motions to suppress. Even if the suppression motions had been granted, given the evidence gleaned from the record, there was not a reasonable probability that the results would have been different. See People v. Evans, 186 Ill. 2d 83, 93 (1999). Prior to the time the police taped the conversations between defendant and his mother at the Department of Corrections and to the time defendant confessed to the police, Amy Ledyard told Officer Schletz that defendant told her how "they" shot Chavez and that he physically play-acted how Chavez reacted to the shooting. This evidence and that of Jose Quinonez's physical description, which matched defendant, of a person he saw running from the scene after the gunshots, likely would have led to a conviction of first-degree murder based on accountability. In light of the other evidence available to the State, defendant has not proven that it is reasonably probable that, had the motions to suppress been granted, counsel would have advised defendant differently. Further, defendant has not established a reasonable probability that, regardless of counsel's advice, defendant would not have pled guilty and would have abandoned a well-negotiated deal, which barred the possibility of an enhancement penalty of 15 years above the general maximum 60-year sentence for first-degree murder and limited the sentence to 35 years' imprisonment.

In sum, we find that defendant's claims do not meet either prong of the Strickland test. Defendant has not demonstrated that counsel's representation fell below an objective standard of reasonableness or that, even if it did, counsel's substandard performance affected the outcome of the plea process. Accordingly, we find the trial court properly dismissed defendant's first postconviction petition at the first stage.

Turning to the second postconviction petition, we observe that defendant does not present any argument on appeal concerning the trial court's summary dismissal of the petition (appeal No. 2--06--0247). Thus, we find the point waived under Supreme Court Rule 341(e)(7) (210 Ill. 2d R. 341(e)(7) (points not argued on appeal are waived)). In any event, section 122--1(f) of the Act (725 ILCS 5/122--1(f) (West 2004)) requires a petitioner to obtain leave of court as a condition precedent to filing a second or subsequent postconviction petition. People v. LaPointe, 365 Ill. App. 3d 914, 920 (2006). Defendant did not request leave to file another petition and did not demonstrate "cause and prejudice" as required by the Act. See 725 ILCS 5/122--1(f) (West 2004). Because defendant failed to request leave of court as a condition precedent to filing the second postconviction petition, we note that the trial court could have denied leave to file the petition (725 ILCS 5/122--1(f) (West 2004)) instead of summarily dismissing it (725 ILCS 5/122--2.1(a)(2) (West 2004)).

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.