2021 IL App (2d) 190195-U
No. 2-19-0195
Order filed January 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-475 |
| JASEN J. PHIPPS, | ) ) | Honorable Philip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's postconviction petition did not make a substantial showing of a constitutional violation and, therefore, was properly dismissed at the second stage. First, though defendant was on psychotropic medication at the time of his guilty plea and had attempted suicide, his conduct at the plea hearing showed him capable of entering a knowing, intelligent, and voluntary plea. Second, trial counsel was not ineffective for failing to recognize through discovery materials that defendant was accused of committing the alleged sex crimes in an apartment from which he was previously evicted; this information could not have been used to damage the State's case, because the date of the crime is not an element of the offense and defendant admitted to police that he sexually abused the victim at the apartment.

¶ 2   Defendant, Jasen J. Phipps, appeals the second-stage dismissal of his petition under the

Post-Conviction Hearing Act (Act) (725 ILCS 5/122 *et seq.* (West 2016)) for relief from his

conviction of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2002)) entered upon a guilty plea. He argues that the trial court erred in granting the State's motion to dismiss the petition because he made a substantial showing of a constitutional violation (1) that he was unfit to enter a knowing, intelligent, and voluntary plea, and (2) that trial counsel was ineffective for failing to show him the discovery or investigate the allegations against him. He asks that we reverse the dismissal and remand for third-stage proceedings. For the reasons that follow, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On August 25, 2014, defendant was indicted on four counts of predatory criminal sexual assault of a child. The allegations arose when defendant was under investigation for similar conduct involving a different victim in Kendall County. Each count alleged that defendant "placed his penis in the mouth of C.A.," that defendant was 17 years of age or older, that C.A. was under 13 years of age, and that the act occurred in De Kalb County. Each count also provided that an extended statute of limitations applied (see *id.* § 3-6(c)).

¶ 5     A guilty plea hearing took place on September 24, 2014. At the outset of the hearing, the State advised the trial court that defendant had agreed to plead guilty to count I (which alleged that defendant committed the offense "on or about December 2003") in exchange for a six-year prison sentence and the State's dismissal of the remaining counts. The State further indicated that the sentence would be served consecutively to any prison sentence imposed for "the charges contained in Kendall County case 14 CF 128," which the parties anticipated would be a 54-year sentence. Defense counsel agreed that the State's representations accurately reflected what he had discussed with defendant and that defendant was prepared to enter a guilty plea. Defense counsel also told

the court that defendant requested that the court enter an order recommending sex offender treatment. The court responded that it would make such a recommendation.

¶ 6    Thereafter, the trial court admonished defendant as to the nature of the charge and the possible sentencing range. He advised him that there would be a period of mandatory supervised release from a minimum of three years to natural life. The court advised defendant that any sentence imposed would be mandatorily consecutive to any sentence imposed on the charges he faced in Kendall County and that he would be required to register as a sex offender. The court asked defendant if he understood the nature of the charges and the sentences he could receive. Defendant responded, "Yes." Defendant responded affirmatively when asked if he heard and understood the terms of the guilty plea negotiated on his behalf and when asked whether he understood the differences between a jury trial and a bench trial. The court advised defendant of the rights that he would be giving up by pleading guilty and asked defendant whether he understood that he was giving up those rights. Defendant responded, "Correct. Yes." When asked whether anyone had made any promises to him or threatened or coerced him into pleading guilty, defendant responded, "No." The court asked, "You are doing so on your own?" and defendant responded, "My own, yeah." Defendant told the court that he was 33 years old and that he had completed his "GED." The court asked, "Sir, at this time are you under the influence of any type of medication or a substance that could impair your ability to enter into a voluntary plea?" Defendant responded, "No."

¶ 7    Thereafter, the trial court heard the following factual basis for the plea:

"Judge, during the course of the Kendall County investigation this defendant was identified as having been involved in some sort of illegal contact with the victim[,] initials C.A.[,] in

DeKalb County. During the course of the investigation DeKalb County and Kendall County authorities spoke with C.A. as well as the defendant ***.

> [Defendant] was cooperative with the police officers. He acknowledged during the course of interviews that he had, in fact, engaged in sexual penetration with victim C.A. during the time period around December of 2003. The defendant at that time placed his penis in the mouth of C.A. at a location in Somonauk, Illinois. He indicated to officers that this happened on more than one occasion.

> C.A. was interviewed. She likewise corroborated statements of Mr. Phipps. For the record C.A.'s date of birth is January 23, 1997. She would have been approximately six years old at the time."

Defendant acknowledged that his signature appeared on the plea of guilty and waiver form. When asked, "[A]re you entering a plea of guilty at this time," defendant responded, "Yes, I am."

¶ 8       The trial court (1) imposed a sentence per the plea agreement, (2) advised defendant that the sentence would be served consecutively to the sentence imposed in Kendall County and the sentence would be served at 85%, and (3) advised defendant that he was subject to a term of mandatory supervised release for three years to natural life. The court further indicated that it would recommend defendant for sex offender treatment that may be available at the Department of Corrections (DOC).

¶ 9       The trial court next admonished defendant concerning his right to appeal and the necessity of filing, within 30 days, a motion to withdraw his plea. After providing all required admonishments, the court asked defendant if he understood everything that the court told him. Defendant responded, "Yeah, I did." The court asked, "Do you have questions at all for me, [defendant]?" Defendant responded, "Not at all. You explained it all."

¶ 10    Defendant did not file a motion to withdraw his guilty plea or a notice of appeal.

¶ 11    On June 5, 2017, defendant filed a *pro se* petition for postconviction relief. Defendant argued that trial counsel was ineffective for failing to file a motion for a fitness hearing and for allowing defendant, who was "mentally challenged," to enter a plea "to crimes he could not comprehend to [*sic*] what, if any crime he committed." He attached medical records showing that he attempted suicide and was hospitalized in April 2014. He stated that he was first prescribed Prozac and later taken off Prozac and prescribed Depakote and trazadone. He stated that the medication was increased after his plea and pointed to records from the DOC. He claimed generally that because he attempted suicide two-and-a-half weeks before his statement to police, was mentally ill, and was on medication, his plea was not voluntary. Defendant also argued that counsel was ineffective "where existing exculpatory evidence was available to defense counsel that proved he had moved from *** Ann. St. Somonauk Illinois [where] the State alleged the crime occurred" and where "there was no evidence presented during the factual basis hearing to sustain a guilty plea." He argued that he received an eviction notice in January 2003 and that he moved out of the Ann Street address within 30 days of the notice.

¶ 12    In his affidavit, defendant stated that he was not in his "right state of mind and/or competent" when he pleaded guilty. He stated that he was a "mentally wounded and defeated man" because his cousin worked for "DCFS" and had seen a copy of the report made by the victim. The cousin reported the details to defendant's family members and defendant "was crushed." He averred that he had "tried to commite [*sic*] suicide only weeks before [his] incarceration and statement/confession" and that he "was taking psychotropic medication before, during, and after [his] court proceedings." Defendant stated that he "had given up on life." Defendant claimed that he "was mentally incapable of providing [counsel] coherent and competent factual

information/statement to prove [his] innocence" and that he "just went along with what [his] lawyer was suggesting." According to defendant, if he had been given a chance to see the discovery, he would have seen "something was a miss [*sic*]." He stated:

"I would have went back on my statement/confession saying that I did not have any sexual contact with [C.A.] and that I know without a doubt in my mind, factually, and unequivocally I was nowhere near *** Ann. St. Somonauk IL. In December of 2002. Especially not commiting [*sic*] any acts of sexual contact because I did not live at that address anymore. I had been evicted from my apartment at *** Ann St. Somonauk IL in February of 2003 and moved to my mom's house [in Bristol, Illinois.]"

¶ 13 Defendant averred that he lived in Bristol until August 2003, at which time he moved to Yorkville, where he lived until January 2004. He continued:

"If I would have had a reasonable degree of comprehendibility [*sic*] I would have taken this case to trial and testified unequivocally that I *** did not have any sexual contact or have any involvement of that nature at *** Ann St. Somonauk IL. in December of 2003 or any other time and would never commite [*sic*] such acts under any circumstances. I would have testified to my exact where abouts [*sic*] being that I lived [in] Yorkville IL. From August of 2003 to January of 2004."

¶ 14 Defendant attached several exhibits, including police reports and medical records, as well as letters about his efforts to obtain information on his alleged eviction. The police reports, which were from De Kalb County and were dated May 21, 2014, June 17, 2014, and June 19, 2014, indicated that defendant admitted to having sexual contact with C.A. while living on Ann Street in Somonauk.

¶ 15    The May 21, 2014, police report indicated that, on May 9, 2014, an investigation was started after De Kalb County sheriff's detective Grubbs learned of a Kendall County investigation involving defendant and two juvenile females. Kendall County officers advised Grubbs that, during a recorded interview, defendant admitted to sexually abusing C.A. while he was living with C.A. and her mother on Ann Street, in Somonauk. Kendall County officers provided Grubbs with copies of their recorded interview with defendant and with a victim-sensitive interview of C.A.

¶ 16    The June 17, 2014, police report indicated the Grubbs met with C.A. at her residence and she agreed to be interviewed. She stated that she recalled living at an apartment in Somonauk when she was approximately six years old, and she identified a picture of the Ann Street apartment. She recalled attending kindergarten in Somonauk for about half a year. She did not remember abuse occurring at the apartment, but she confirmed ongoing abuse by defendant and stated that it began around that time.

¶ 17    The June 19, 2014, police report indicated that Grubbs interviewed defendant about his prior statement regarding C.A. At the time, defendant was in jail in Kendall County on a related investigation involving his daughter. The interview was video recorded. According to the police report, defendant made a statement, which Grubbs summarized as follows:

"[Defendant] recalled the first time that he had [C.A.] give him oral sex was at the apartment he shared with [C.A.'s mother], located at *** Ann St., Somonauk, Illinois. At the time, [C.A.] was 6-7 years old. [Defendant] positively identified a photograph of the apartment that we showed to him and advised that it was the, 'upper right apartment', see supplemental report. At that time, [defendant] was 18-19 years old and had recently become involved with [C.A.'s mom]."

[Defendant] estimated that while they lived at *** Ann St., Somonauk, he had [C.A.] perform oral sex on him approximately 4-5 times, although he could not recall the specific number of times or provide details on each occurrence. [Defendant] did say that he remembered standing up most of the time when [C.A.] performed oral sex on him. [Defendant] also confirmed that sexual abuse occurred at three different locations; the aforementioned address, a residence in Oswego, and Plano, Illinois. At one point, he commented, 'the guilt has been killing me' and later after we finished asking him questions, he said, 'I knew I was guilty'. [Defendant] did not provide any other specific information concerning the abuse that occurred at *** Ann St., Somonauk."

¶ 18 The medical records showed that defendant attempted suicide on April 15, 2014, and was admitted to the hospital.

¶ 19 A psychiatric examination report, dated April 16, 2014, indicated that defendant "has been increasingly depressed," that he lost his job, lost his housing, and is having problems with his girlfriend. His mental status was described as "extremely depressed, despondent," "[s]uicidal," with "limited" insight and judgment.

¶ 20 A psychiatric progress note, dated April 19, 2014, indicated that defendant "continues to struggle with his mood" and that he "still feels suicidal." The note further indicated that defendant had a longstanding history with "alcohol dependence" and had "just missed his DUI hearing Monday." His mental status was "not presenting as depressed, with possibly questioning either bipolar disorder or antisocial personality." It was recommended that he "continue Prozac at this point."

¶ 21 A psychiatric progress note, dated April 21, 2014, described defendant's mental status as "pretty irritable, but his speech is loud and somewhat argumentative, not reflecting depression."

The doctor recommended taking defendant off Prozac and putting him on a mood stabilizer. The doctor prescribed starting him "on Depakote 500 mg at bedtime."

¶ 22    A discharge summary, dated April 28, 2014, indicated that defendant was "initially detoxed from alcohol" and was "placed on Prozac in an attempt to help with his mood." Defendant became "more irritable" and "angry" so his medication was changed to Depakote. Defendant's mental status upon discharge was described as follows:

> "Upon discharge, the patient was very pleasant, appeared to be very hopeful and futuristic. Denied any major difficulties, except for some discomfort in his abdomen, and we helped him to arrange me [*sic*] for followup [*sic*] with medical staff. He is denying suicidal and homicidal ideation and is very happy about getting out of here, getting a job in construction, and going on with his life."

His diagnosis upon discharge was "Bipolar disorder" and "Alcohol dependence." He was prescribed "Trazadone 50 mg at bedtime" and "Depakote 500 mg b.i.d."

¶ 23    Defendant also attached a "Mental Health Progress Note" from the DOC, dated January 15, 2015, which appears to indicate that his morning dose of Depakote was increased from 500 mg to 1000 mg.

¶ 24    Defendant also attached what appears to be a response from Commonwealth Edison "Customer Correspondence Group" responding to defendant's request for "2002-2003 billing records" and advising him that they do not keep records for more than two years. He also attached a copy of a letter he sent to "Current Resident" (there is no address on the letter) asking for help in contacting their landlord. There is a handwritten note on the letter stating "[s]orry, our records only date back 5 yr." and advising defendant to consult the De Kalb County court records. He also

attached a copy of a FOIA request seeking to obtain, *inter alia*, a copy of the eviction notice he received in January 2003.

¶ 25    On July 18, 2017, the trial court advanced the petition to second-stage proceedings and appointed an attorney to assist defendant in filing an amended pleading or supplemental petition for postconviction relief.

¶ 26    On October 23, 2018, defendant, through postconviction counsel, filed a supplemental petition, arguing that trial counsel was ineffective for failing to conduct an investigation and review the discovery with defendant. According to defendant, had counsel done so, he would have realized that defendant had a valid defense.

¶ 27    On December 17, 2018, the State moved to dismiss defendant's petition. The State argued, *inter alia*, that defendant forfeited his claim that trial counsel was ineffective for failing to request a fitness hearing, because all of the facts alleged in the petition concerning defendant's fitness at the time he pleaded guilty were known to defendant in time for him to file a motion to withdraw his guilty plea. The State further argued that defendant also forfeited his claim that trial counsel was ineffective for failing to investigate when defendant resided at the Ann Street address, because that information would have been known to defendant when he pleaded guilty. Additionally, the State argued that defendant did not raise a cognizable claim of actual innocence, because he did not allege that new information had come to light.

¶ 28    On February 21, 2019, the trial court granted the State's motion, for the reasons stated therein.

¶ 29    This timely appeal followed.

¶ 30                                  II. ANALYSIS

¶ 31    At issue in this appeal is whether the second-stage dismissal of defendant's petition was proper. The Act provides a method by which persons under a criminal sentence can assert that their convictions were the result of a substantial denial of their federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 10. "A postconviction proceeding is a collateral attack on the prior conviction or sentence that does not relitigate a defendant's innocence or guilt." *Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 10. "Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceeding took place." *Id.* ¶ 11.

¶ 32    The Act establishes a three-stage process for the adjudication of a postconviction petition. *Id.* At the first stage, the trial court has 90 days to review the petition without the input of any party, and it may summarily dismiss the petition if it finds it to be frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016); *Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 11. If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel. 725 ILCS 5/122-2.1(b), 122-4 (West 2016); *Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 12. "[A]fter counsel has made any necessary amendments to the petition, the State may move to dismiss it. [Citations.] If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage. [Citation.]" *Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 13. If the defendant makes a "substantial showing" of a constitutional violation, the petition advances to the third stage where the trial court conducts an evidentiary hearing. *People v. DuPree*, 2018 IL 122307, ¶ 28; see 725 ILCS 5/122-6 (West 2016).

¶ 33    "At the second stage, '[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations.' " *DuPree*, 2018 IL 122307, ¶ 29 (quoting *People*

*v. Coleman*, 183 Ill. 2d 366, 385 (1998)). Under the Act, such determinations are made at the evidentiary stage, not the dismissal stage. *Id.* "At the second stage of proceedings, all well-plead facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "[T]he substantial showing of a constitutional violation that must be made at the second stage is 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief.' (Emphasis omitted.)" *DuPree*, 2018 IL 122307, ¶ 29 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35).

¶ 34    Where, as in this case, the trial court dismisses a postconviction petition at the second stage, we review its ruling *de novo*. *Pendleton*, 223 Ill. 2d at 473. "We may affirm the dismissal of a postconviction petition on any basis supported by the record." *People v. Rivera*, 2014 IL App (2d) 120884, ¶ 8.

¶ 35    Defendant argues that he made a substantial showing of a constitutional violation (1) that he was unfit to enter a knowing, intelligent, and voluntary plea, and (2) that trial counsel was ineffective for failing to show him the discovery or investigate the allegations against him. He argues that his claims were not procedurally defaulted. In response, the State argues that defendant procedurally defaulted his claims, because he failed to move to withdraw his plea or file a direct appeal. Alternatively, the State argues that defendant has failed to make a substantial showing as to either claim.

¶ 36    First, the State maintains that defendant forfeited the claims raised in his petition, because he failed to file a motion to withdraw his guilty plea. In support, the State relies primarily on this court's decision in *People v. Vilces*, 321 Ill. App. 3d 937 (2001). In *Vilces*, we held that a defendant who fails to move to withdraw his guilty plea (a prerequisite for direct appeal) forfeits

postconviction consideration of any claim that his plea was involuntary, if the facts that form the basis of that claim were available to him at the time for filing a motion to withdraw the plea. *Id.* at 942. Defendant responds that *Vilces* was wrongly decided. He cites cases from other districts that apply a less stringent concept of forfeiture. See *People v. Brooks*, 371 Ill. App. 3d 482, 485-86 (4th Dist. 2007) (the well-established principle that a defendant forfeits on collateral review any issues he could have brought on direct appeal does not apply where the defendant does not actually take a direct appeal); *People v. Stroud*, 333 Ill. App. 3d 416, 418 (3rd Dist. 2002) (a defendant can attack his guilty plea on collateral review without having sought, in the original proceeding, to withdraw the plea); *People v. Miranda*, 329 Ill. App. 3d 837, 841 (1st Dist. 2002); *People v. Tripp*, 248 Ill. App. 3d 706, 711 (5th Dist. 1993). Defendant argues alternatively that the present case is not controlled by *Vilces*, because his postconviction claims rely on information that was not available to him at the time he filed his guilty plea. We need not decide whether forfeiture applies here, because forfeiture aside, defendant has failed to make a substantial showing of a constitutional violation.

¶ 37    We first consider defendant's claim that he was unfit to enter a knowing guilty plea. Due process bars the prosecution of an unfit defendant. *People v. Hanson*, 212 Ill. 2d 212, 216 (2004). A defendant is presumed to be fit to stand trial and will be considered unfit only if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings against him or to assist in the defense. 725 ILCS 5/104-10 (West 2016); *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). Fitness refers only to defendant's ability to function within the context of a trial. *Haynes*, 174 Ill. 2d at 226. "A defendant may be competent to participate at trial even though his mind is otherwise unsound." *People v. Eddmonds*, 143 Ill. 2d 501, 519 (1991).

¶ 38    In stating his claim, defendant relied on his own affidavit and medical records. He argues on appeal that the medical records raised a *bona fide* doubt of his fitness to enter a plea because he had "given up on life" and did not care what happened to him. He notes that the records show that, five months prior to the plea hearing, he attempted suicide by slitting his wrists and was, consequently, hospitalized for two weeks. While in the hospital, he was diagnosed with bipolar disorder and prescribed psychotropic medication, which was administered throughout the proceedings and subsequently increased after he was transferred to the DOC.

¶ 39    Defendant has failed to make a substantial showing that he was unfit to enter his guilty plea. To be sure, defendant's records showed that he attempted suicide five months before he pleaded guilty. However, "a history of suicide attempts does not by itself demonstrate that a defendant is unfit." *People v. Sanchez*, 169 Ill. 2d 472, 483 (1996). Defendant's records also showed that he had been prescribed Depakote and trazadone and that his Depakote dosage was increased several months after he entered his plea. However, a defendant is not presumed unfit to stand trial simply because he is taking psychotropic medication. See 725 ILCS 5/104-21 (West 2016); *People v. Stokes*, 333 Ill. App. 3d 655, 659-60 (2002). We also note that defendant expressly denied at the time of his plea that he was "under the influence of any type of medication or a substance that could impair [his] ability to enter into a voluntary plea." Moreover, the medical records do not show that defendant's capacity to understand the proceedings or assist in his defense was impaired at the time that he entered his plea. To the contrary, the medical records from the date of discharge, April 28, 2014, showed:

> "Upon discharge, the patient was very pleasant, appeared to be very hopeful and futuristic. Denied any major difficulties, except for some discomfort in his abdomen, and we helped him to arrange me [*sic*] for followup [*sic*] with medical staff[.] He is denying suicidal and

homicidal ideation and is very happy about getting out of here, getting a job in construction, and going on with his life."

At the plea hearing several months later, defendant was attentive to the proceedings, responded appropriately, and indicated no confusion or misunderstanding of the nature of the proceedings. See *People v. Maury*, 287 Ill. App. 3d 77, 83 (1997). Thus, defendant's claim is belied by the record, and we conclude that he failed to make a substantial showing that his plea was involuntary to warrant further proceedings.

¶ 40 We next consider defendant's claim that he made a substantial showing of a constitutional violation in that trial counsel was ineffective for failing to show him the discovery or investigate the allegations against him. A claim of ineffective assistance of counsel is subject to the dual requirements set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must establish that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *Id.* at 688, 694. At the second stage of postconviction proceedings, a defendant must make a substantial showing both that counsel's performance was deficient and that the defendant was prejudiced. *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 55.

¶ 41 "Whether defense counsel was ineffective for failure to investigate is generally determined by the value of the evidence that was not presented and the closeness of the evidence that was presented. [Citation.] In determining whether a defendant has been denied his right to the effective assistance of counsel, we use a fact sensitive analysis, which seeks to measure the quality and impact of counsel's representation under the circumstances of the individual

case. [Citation.]" (Internal quotation marks omitted.) *People v. Clark*, 2011 IL App (2d) 100188, ¶ 24.

"Decisions regarding which items received in discovery that a defense attorney chooses to share with or discuss with his or her client is a matter of trial strategy." *People v. Walker*, 2019 IL App (3d) 170374, ¶ 18. "[T]hat decision is afforded a strong presumption that it was the product of sound trial strategy rather than incompetence." *Id.* However, the presumption is rebuttable. *Id.* "[A] defendant may be able to rebut that presumption by showing that counsel withheld discovery information that cast doubt on the State's ability to prove him guilty or was otherwise particularly relevant to his decision to plead guilty." *Id.*

¶ 42    Here, defendant argues that, had trial counsel investigated the location of the offense (as contained in the police reports) and shared the contents of discovery with defendant, counsel would have discovered that defendant had been accused of assaulting C.A. in an apartment that he had been evicted from months before. However, the fact that defendant had been evicted from Ann Street in Somonauk prior to December 2003 did not cast doubt on the State's ability to prove him guilty of predatory criminal sexual assault. The State was not required to prove that the predatory criminal sexual assault was committed on a particular date, as the date was not an essential element of the offense. See *People v. Letcher*, 386 Ill. App. 3d 327, 331 (2008) (the date of the crime of predatory criminal sexual assault of a child is not an essential element of the offense when the statute of limitations is not questioned); see also *People v. Bishop*, 218 Ill. 2d 232, 247 (2006) ("[I]t is often difficult in the prosecution of child sexual abuse cases to pin down the times, dates, and places of sexual assaults, particularly when the defendant has engaged in a number of acts over a prolonged period of time."). Moreover, there is support in the record for defendant's admission, as part of the factual basis for the plea, that he sexually abused C.A. "at a location in

Somonauk, Illinois," which is in De Kalb County. As indicated in the police reports, defendant stated that he "recalled the first time that he had [C.A.] give him oral sex was at the apartment he shared with [C.A.'s mother], located at \*\*\* Ann Street, Somonauk, Illinois. At the time, [C.A.] was 6-7 years old." In addition, "[defendant] estimated that while they lived at \*\*\* Ann St., Somonauk, he had [C.A.] perform oral sex on him approximately 4-5 times, although he could not recall the specific number of times or provide details on each occurrence." C.A. stated that the abuse began when she was approximately six years old and living at the Ann Street address. C.A. would have turned six in January 2003. Although C.A. could not specifically recall abuse occurring at the apartment, her statements were not inconsistent with defendant's. Defendant's eviction from the premises in February 2003 would not have cast doubt on the State's ability to prove that defendant committed the offense in De Kalb County. Therefore, he cannot make a substantial showing of ineffective assistance of counsel based on counsel's decision not to investigate if and when defendant had been evicted from the premises or to share the contents of the police reports with defendant.

¶ 43                                III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 45    Affirmed.

- 17 -